[Cite as *State v. Stephens*, 2022-Ohio-2944.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 21CA0068 |
| | : | |
| ANTOINE STEPHENS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of Common Pleas, Case No. 20CR364

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      August 22, 2022

APPEARANCES:

For Plaintiff-Appellee:

CLIFFORD J. MURPHY
ASST. LICKING CO. PROSECUTOR
20 North Second St.
4th Floor
Newark, OH 43055

For Defendant-Appellant:

THOMAS F. HAYES
EMILY D. ANSTAETT
65 E. Livingston Ave.
Columbus, OH 43215

PAUL GIORGIANNI
1538 Arlington Ave.
Columbus, OH 43212-2710

*Delaney, J.*

{¶1} Appellant Antoine Stephens appeals from the August 19, 2021 Judgment Entry of the Licking County Court of Common Pleas. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   The following evidence is adduced from the record of appellant's jury trial.

{¶3} Detective Greg Collins of the Licking County Sheriff's Office testified about the practices of the Central Ohio Drug Enforcement (CODE) Task Force, which is an inter-agency law enforcement effort that interdicts drug trafficking. Generally an investigation starts with a tip or complaint; CODE members then perform surveillance of a target location, observe traffic patterns, perform traffic stops of individuals leaving the location, and generally gather information. Sometimes those traffic stops result in a "dirty stop," in which narcotics are found on an individual or in a vehicle. That individual is then sometimes given the opportunity to "help themselves out" by providing CODE with information about the location and/or purchasing narcotics as a confidential informant (CI).

{¶4} Collins testified CIs are generally developed from individuals found with a small amount of narcotics on them, which would be a lower-level felony. If the person has a "decent record," meaning relatively few criminal convictions, law enforcement will approach the prosecutor's office on their behalf and a contract is created in which the CI agrees to participate in "controlled buys" of narcotics in exchange for reduced charges. Law enforcement and the CI become parties to the contract, which spells out what charge the CI is facing and what the outcome of reducing the criminal charge might be.

{¶5} The instant case arose on July 17, 2020 with the traffic stop of a CI known to Detective Kyle Boerstler, the lead investigator on this case. The CI provided useful information to Boerstler in the past. Notably, this CI would never appear at trial in the instant case because he was murdered.

{¶6} On July 17, 2020, the CI identified appellant as a potential target for investigation and claimed he could buy two pounds of methamphetamine from him. The CI pulled up a Facebook photo of appellant and Boerstler confirmed the identification with a photo from OLEG. Boerstler learned the CI knew appellant in prison, and the CI revealed text messages detailing an extensive history of drug dealing transactions with appellant.

{¶7} The goal of the ensuing investigation was to buy two pounds of methamphetamine from appellant. Collins supervised three recorded telephone calls between appellant and the CI discussing the transaction. The CI identified the person on the phone during the calls as appellant. The CI also exchanged text messages with a person identified on the CI's phone as "Antoine Stephens, AKA Black."

{¶8} The recorded phone calls established a plan in which appellant agreed to deliver two pounds of methamphetamine to the CI at an apartment complex in Hebron, with appellant planning to drive into an open garage to deliver the narcotics. Prior to the delivery, the CI received several text messages stating appellant was on his way and was "10 minutes out."

{¶9} Appellant arrived at the garage driving a Toyota Rav 4. Unexpectedly, he had a front seat passenger: Dwight Gales. Upon pulling into the garage, both appellant and Gales were arrested. Per the CI's information, Boerstler found the methamphetamine

in an air vent box in the engine compartment of the vehicle. Appellant did not have contraband on his person but did have $3,800 in cash. Gales had approximately 17 grams of cocaine in his pocket.

{¶10} Boerstler testified Gales told him the methamphetamine in the engine compartment and the cocaine on his person belonged to him. Boerstler testified it was appellant's voice, not Gales', that he heard on the recorded phone calls with the CI planning the transaction. Three phones were found in the passenger compartment of the vehicle. Forensic analysis was performed upon appellant's suspected phone, and the analysis indicated that phone exchanged text messages with the CI and made the follow-up phone calls in the moments leading up to the arrest.

{¶11} Boerstler testified that Gales was not mentioned in the conversations leading up to the controlled buy and there was no evidence on the cell phone that Gales was involved.

{¶12} The Director of the Central Ohio Regional Crime Lab testified that the bulk amount methamphetamine is 3 grams and that "100 times bulk amount" is 300 grams or more. The total amount of the substance found in the air compartment of the Toyota weighed approximately 900 grams and was confirmed by testing to be methamphetamine, a Schedule II substance.

{¶13} Appellant was charged by indictment with one count of aggravated drug trafficking (methamphetamine) pursuant to R.C. 2925.03(A)(1)(C)(1)(f), a felony of the first degree. The indictment contains two forfeiture specifications, the first for $3,894 in cash pursuant to R.C. 2981.02(A)(1)(B) and R.C. 2941.1417(A), and the second for a

gold ring, necklace, and pendant pursuant to R.C. 2981.02(A)(1)(B) and R.C. 2941.1417(A).

{¶14} Appellant entered a plea of not guilty and filed a motion to suppress evidence seized from the vehicle; appellee responded with a memorandum in opposition. The matter was scheduled for suppression hearing on January 11, 2021.

{¶15} On January 11, 2021, appellant filed a motion to disclose the identity of all confidential informants. Appellee filed a response on January 20, 2021. Appellant filed a written withdrawal of the motion to disclose confidential informants on February 3, 2021.

{¶16} On February 9, 2021, appellee filed a notice of intent to offer certain evidence, to wit, appellant's prior activities related to drug trafficking.

{¶17} On February 9, 2021, the trial court overruled appellant's motion to suppress by Judgment Entry.

{¶18} On August 17, 2021, appellant filed a motion in limine and moved the trial court to exclude "investigatory data generated against him which is highly speculative in nature" and includes information from a confidential informant who is now deceased.

{¶19} The matter proceeded to trial by jury and appellant was found guilty as charged. The jury also made a special finding beyond a reasonable doubt that the amount of methamphetamine involved in the offense "was equal to or exceeds one hundred time bulk" (*sic*).

{¶20} The trial court sentenced appellant to serve an indefinite mandatory prison term of 11 years to 16 ½ years, to be followed by a mandatory period of 5 years of post-release control.

{¶21} Appellant now appeals from the judgment entry of conviction and sentence.

{¶22} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I. THE TRIAL JUDGE ERRED BY FAILING TO INSTRUCT THE JURY AS REQUIRED BY R.C. 2923.03(D)."

{¶24} "II. THE JURY HEARD PREJUDICIAL, INADMISSIBLE HEARSAY STATEMENTS OF THE CONFIDENTIAL INFORMANT."

{¶25} "III. ERRORS RELATED TO THE STATUTORY TERM 'BULK AMOUNT (*sic*).'"

**ANALYSIS**

I.

{¶26} In his first assignment of error, appellant argues the trial court erred by failing to instruct the jury as required by R.C. 2923.03(D). We disagree.

{¶27} R.C. 2923.03(D) applies to accomplice testimony and states:

> If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:

> "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

{¶28} In the instant case, appellant alleges the trial court should have given the accomplice-testimony instruction because Boerstler testified Gales told him the methamphetamine was his; Gales was also arrested for the methamphetamine in the engine compartment and for the cocaine on his person.

{¶29} We note Boerstler's testimony about Gales' admission was elicited by defense trial counsel. Gales' claim was favorable to appellant's defense at trial because he claimed the methamphetamine wasn't his. On appeal, though, he argues Gales' admission via Boerstler was damaging to the defense because the statement helped appellee establish a case of complicity against appellant.

{¶30} Appellee responds this claim is invited error; upon eliciting the hearsay statement from Boerstler, appellant did not need to call Gales as a potentially problematic trial witness, even though Gales was disclosed as a defense witness. Obtaining the statement from Boerstler instead brought in the helpful evidence without the problems Gales could have caused.

{¶31} Further, Gales did not take the stand and testify against appellant; therefore, appellee argues, R.C. 2923.03(D) is inapplicable by the plain language of the statute because there is no "accomplice testimony." Appellant responds the instruction should also apply to similarly-questionable hearsay statements of an accomplice that come in through another witness.

{¶32} We need not reach the issue of whether the statute applies to hearsay statements, however, because we find no plain error.  Appellant did not object to the jury instructions, therefore waiving all but plain error. Crim.R. 30(A); *State v. Lloyd*, 5th Dist. Licking No. 2020 CA 00074, 2021-Ohio-2420, ¶ 42, citing *State v. Williford*, 49 Ohio St.3d 247, 251, 551 N.E.2d 1279 (1990).

{¶33} Appellant did not request the accomplice-testimony instruction, and in the context of the entire trial, it would have been illogical for appellant to do so. Appellant would have effectively argued both that the methamphetamine was Gales' but Gales' admission of ownership was not credible.

{¶34} We apply the doctrine of plain error cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Rohaley*, 5th Dist. Stark No. 1998CA00092, 1999 WL 4505, *4. In that regard, "[T]he test for plain error is stringent." *State v. Ellison*, 2017-Ohio-284, 81 N.E.3d 853, ¶ 27 (4th Dist.). "To prevail under this standard, the defendant must establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 64. An error affects substantial rights only if it changes the outcome of the trial. Id.

{¶35} Appellant has the burden to establish the existence of plain error, and therefore must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶36} In the instant case, appellant does not explain why the outcome of the trial would have been different if the accomplice-testimony instruction would had been given.

The jury convicted appellant, indicating it did not find Gales' claim of ownership credible. An instruction casting doubt on that statement would not have changed this result. Appellant's best defense at trial was likely the one he used—the narcotics weren't his. It is impossible to discern, and appellant does not reveal, how he would have been acquitted if this instruction had been given.

{¶37} We have reviewed the requested instruction in its entirety and in the context of the instructions as a whole, and find the trial court did not commit plain error in not providing an instruction pursuant to R.C. 2923.03(D). This omission, even if considered an error, did not seriously affect the fairness, integrity or public reputation of judicial proceedings, did not have an effect on the outcome of the trial, and was not a manifest miscarriage of justice. *State v. Lloyd*, supra, 2021-Ohio-2420 at ¶ 47.

{¶38} Appellant's first assignment of error is overruled.

II.

{¶39} In his second assignment of error, appellant weaves together a number of arguments. He asserts the statements of the deceased CI repeated by other witnesses were inadmissible hearsay which the trial court erred in admitting, and defense trial counsel's failure to object to the hearsay is ineffective assistance of counsel. We disagree.

{¶40} The Confrontation Clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Out-of-court statements by a witness which are testimonial in nature are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*,

541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). If testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause. *Id.* at 59, *citing Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985); *State v. Maxwell,* 139 Ohio St. 3d 12, 9 N.E.3d 930, 2014-Ohio-1019, ¶131. Evid. R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." For clarity, we will address each piece of challenged evidence separately.

*Collins testifies CI identified appellant as caller*

{¶41} First, appellant points to Collins' testimony that the CI identified the caller during the series of "controlled buy" phone calls as appellant. Appellant cites the following exchange:

> * * * *.
>
> Q:  Detective Collins, who were those two voices?
>
> A:  The confidential informant **and what I believed to be Antoine Stephens.**  (Emphasis added).
>
> Q:  Based on what the confidential informant—
>
> A:  That is correct.
>
> * * * *.
>
> T. 124-125.

{¶42} In the context of Collins' testimony at this point, he is not identifying appellant as the other party to the call. He is explaining why he set up a controlled buy with appellant as the target: because he believed appellant to be the person involved in the pending drug transaction.

{¶43} It is well-established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). The testimony of a police officer about actions undertaken as a result of conversations during a criminal investigation are not considered hearsay and are properly admitted by the trial court. *State v. Bound*, 5th Dist. Guernsey No. 03 CA 21, 2004-Ohio-6530, ¶ 34. Collins' statement here was admitted without error.

*Boerstler testifies CI said he didn't know Gales*

{¶44} Next, appellant points to Boerstler's testimony that he contacted the CI after the arrest to ask if the CI knew anything about Gales, but the CI didn't know Gales. Appellant argues this statement goes to the truth of the matter asserted because it casts doubt on his defense that the methamphetamine belonged to Gales. In other words, the CI's statement that he didn't know Gales made it unlikely Gales was the person on the other end of the phone calls and text messages setting up drug transactions.

{¶45} Defense counsel did not object to the statement, thereby waiving all but plain error. *State v. West*, 2017-Ohio-4055, 91 N.E.3d 365, ¶ 39 (5th Dist.). Pursuant to Crim.R. 52(B), a plain error or defect affecting substantial rights may be noticed if not brought to the attention of the court. *State v. Long,* 53 Ohio St.2d 91, 94, 7 O.O.3d 178, 372 N.E.2d 804 (1978). Plain error is to be invoked only in exceptional circumstances to avoid a miscarriage of justice. (Citation omitted.) *Id.* In order for Crim.R. 52(B) to apply, a reviewing court must find that (1) there was an error, i.e., a deviation from a legal rule; (2) that the error was plain, i.e., that there was an "obvious" defect in the trial proceedings;

and (3) that the error affected "substantial rights," i.e., affected the outcome of the trial. (Citations omitted.) *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶46} The statement that the CI did not know Gales is hearsay, but the question on plain error review is whether its admission affected the outcome of the trial, and we find overwhelmingly that it did not. The jury had conflicting evidence before it about the level of Gales' involvement and appellant has not convinced us that this comment had any effect on the trial outcome. We find the above statement did not affect appellant's substantial rights and therefore does not constitute plain error, even though it did not qualify under any rule of evidence. *State v. Hill*, 5th Dist. Fairfield No. 98CA67, 2002 WL 109297, *4 (Jan. 17, 2002).

{¶47} Appellant further argues that defense trial counsel's failure to object to the statement about Gales constitutes ineffective assistance. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009).

{¶48} The United States Supreme Court discussed the prejudice prong of the *Strickland* test:

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*, at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S.Ct. 2052.

{¶49} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373, *quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶50} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *Id.*

{¶51} Appellant argues defense trial counsel's failure to object to the statement regarding Gales is ineffective assistance. Upon review we find there is no reasonable probability that the outcome of the trial would have been different had counsel objected to the introduction of this statement. "Trial counsel is not ineffective for choosing, for tactical reasons, not to pursue every possible trial objection." *State v. West*, 5th Dist. No.

16 CA 11, 2017-Ohio-4055, 91 N.E.3d 365, ¶ 102, citing *State v. Raypole*, 12th Dist. Fayette No. CA2014-05-009, 2015-Ohio-827, ¶ 24. This is because "[o]bjections tend to disrupt the flow of a trial and are considered technical and bothersome by a jury." *State v. Steele*, 12th Dist. Butler No. CA2003-11-276, 2005-Ohio-943, ¶ 100, citing *State v. Hill*, 75 Ohio St.3d 195, 211, 661 N.E.2d 1068 (1996).  Especially with a statement as fleeting as this one, defense trial counsel may not have wanted to call attention to the CI's knowledge of Gales, or lack thereof.

*Boerstler testifies CI identified appellant as party to text messages*

{¶52} Third, appellant points to Boerstler's testimony that the CI showed him a series of text messages in which the CI identified the other party in the messages as appellant. This statement was corroborated by appellee's forensic evidence linking the phone at issue to the calls and text messages between appellant and the CI.  Boerstler's testimony was not met with any objection, but in light of the cumulative nature of the evidence regarding the party texting with the CI, we find admission of the testimony was not plain error. We further find admission of Boerstler's statements that the CI told him the texts were from appellant did not affect the outcome of the trial such that it would have been different if counsel had objected, therefore this is not ineffective assistance of counsel.

*Boerstler's testimony that CI claimed to buy a pound of methamphetamine from appellant*

{¶53} Fourth, appellant points to Boerstler's testimony that the CI initially told him he was buying a pound of narcotics at a time from appellant when he identified appellant as a potential target for investigation.  The jury was provided with a limiting instruction as to evidence of other drug transactions or criminal behavior.  T. 363.  The jury is presumed

to follow the instructions of the trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Appellant has not pointed to any evidence in the record that the jury failed to do so in this case. The statement also explains Boerstler's actions in undertaking an investigation of appellant. Admission of the statement is not plain error and failure to object to the statement is not ineffective assistance of counsel.

*Boerstler testified Gales identified appellant's phone*

{¶54} Fifth, appellant asserts the following error: "Detective Boerstler testified to the informant's statement identifying a phone in the vehicle as belonging to [appellant.]" Upon our review of the cited portion of the record, Boerstler stated it was Gales who identified which phone belonged to which occupant of the vehicle. We note the statement was elicited by defense trial counsel. Again, in light of the cumulative evidence of the phone calls, texts, and identity of the speaker, we find no plain error regarding admission of this fleeting statement. We also find this statement had no effect on the outcome of the case and was therefore not ineffective assistance of counsel.

{¶55} Appellant's second assignment of error is overruled.

III.

{¶56} In his third assignment of error, appellant argues the trial court erred in its jury instruction regarding the bulk amount of methamphetamine. We disagree.

{¶57} Jury instructions are within the sound discretion of the trial court, and the court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. DeMastry*, 155 Ohio App.3d 110, 2003–Ohio–5588, 799 N.E.2d 229, ¶ 54 (5th Dist.), citing *State v. Musgrave*, 5th Dist. Knox No. 98CA10, 2000 WL 502688 (April 24, 2000),

and *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist.1993). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶58} In the instant case, appellant argues the trial court failed to instruct the jury upon an element of the offense, to wit, the meaning of the term "bulk amount." Appellant was charged with one count of aggravated drug trafficking (methamphetamine) pursuant to R.C. 2925.03(A)(1)(C)(1)(f), which states:

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

* * * *.

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:

* * * *.

(f) If the amount of the drug involved equals or exceeds one hundred times the bulk amount and regardless of whether the

offense was committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, aggravated trafficking in drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

* * * *.

{¶59} The jury in this case was instructed as follows, in pertinent part:

* * * *.

The Defendant is charged with aggravated trafficking in drugs, methamphetamine, in violation of Ohio Revised Code Section 2925.03(A)(1)(C)(1)(f). Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 17th day of July, 2020, in Licking County, Ohio, the Defendant knowingly sold or offered to sell methamphetamine, a Schedule II controlled substance, and the amount of the drug equals or exceeds 100 times bulk.

* * * *.

You are instructed that methamphetamine is a Schedule II substance.

If you find the Defendant guilty beyond a reasonable doubt on this count, you will further find beyond a reasonable doubt that the

amount of the drug was or was not equal to or exceeded 100 times the bulk amount.

\* \* \* \*.

T. 365, 367.

{¶60} Appellee presented the testimony and lab report prepared by Mark Hiatt, the regional director of the Central Ohio Regional Crime Lab, who tested the substance recovered from the engine compartment of the vehicle. The substance was found to weigh, in total, approximately 900 grams and tested as methamphetamine, a Schedule II substance in Ohio. T. 240. Hiatt further testified that the bulk amount for methamphetamine is 3 grams, thus this amount is almost 300 times bulk. T. 241.

{¶61} Appellant argues the trial court was required to instruct the jury upon the meaning of the term "bulk amount," which appellant asserts "is a technical term of art defined by statute, with a meaning that varies depending upon the facts." Brief, 25. This contradictory position is one we have rejected. While appellant argues that the court was required to have testimony or other proof as to the definition of "bulk amount," we disagree. See, *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶ 57. Methamphetamine is a Schedule II drug by statute. The bulk amount of a controlled substance containing any amount of a schedule II stimulant is three grams. R.C. 2925.01(D)(1)(g). Hiatt testified as to the amount of methamphetamine, approximately 900 grams, an amount in excess of 100 times bulk. In *Morales,* we noted the following regarding statutory bulk amounts:

As noted by the court in *State v. Feltner* [2nd Dist. Miami No. 88-CA-34, 1989 WL 94550 (Aug. 16, 1989)]: "Crim.R. 27 adopts for

criminal proceedings the judicial notice provisions of Civ.R. 44.1. The rule requires the court to take full judicial notice of the statutory law of Ohio and to present that law to the jury without separate proof. The jury is required to accept the court's instruction.

"No additional proof beyond the terms of the statute was required for the court's determination for the jury of the meaning of "bulk amount".... Testimonial proof of the weight and content of the material offered for sale by Feltner then permitted the jury to conclude that the terms of the statute were met." Id at 5.

Likewise, in the case sub judice, testimony from [crime lab personnel] as to the amount of methamphetamine in each baggie permitted the jury to conclude that appellant possessed 100 times the bulk amount of methamphetamine. No additional proof was required. Based on the jury's conclusion, the trial court correctly sentenced appellant to prison for possessing 100 times the bulk amount.

*State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶ 57-60.

{¶62} The trial court was not required to further define the term "bulk amount" for the jury. Moreover, neither party objected to the jury instructions in the instant case. Crim.R. 30 provides that a party must object to an omission in the court's instructions to the jury in order to preserve the error for appeal. "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the

evidence." *State v. Williford*, 49 Ohio St.3d 247, 251–252, 551 N.E.2d 1279 (1990). (Citations omitted). If an objection is not made in accordance with Crim.R. 30, or the defendant fails to submit a required written jury instruction, Crim.R. 52(B), the plain error doctrine, applies. *State v. Dorsey*, 5th Dist. Stark No. 2014CA00217, 2015–Ohio–4659, ¶ 61, citing *Williford*, *supra*, and *State v. Gideons*, 52 Ohio App.2d 70, 368 N.E.2d 67(8th Dist.1977).

{¶63} Appellant concedes he did not request orally or in writing the bulk-amount instruction he now contends should have been given. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B). *Dorsey*, supra, at ¶ 64; *State v. Mowls*, 5th Dist. Stark No. 2017CA00019, 2017-Ohio-8712, ¶ 22.

{¶64} Failure to properly instruct a jury is not in most instances structural error, thus the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) applies; failure to properly instruct the jury does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. *State v. Bleigh*, 5th Dist. Delaware No. 09-CAA-03-0031, 2010-Ohio-1182, 2010 WL 1076253, ¶ 119, citing *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

{¶65} Appellant does not explain how the outcome of the trial would have been different if such an instruction had been given. *State v. Carpenter*, 5th Dist. Licking No. 20-CA-11, 2021-Ohio-821, ¶ 33.

{¶66} Appellant's third assignment of error is overruled.

**CONCLUSION**

{¶67} Appellant's three assignments of error are overruled and the judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Baldwin, J., concur.