[Cite as *State v. Kanable*, 2020-Ohio-4335.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. WD-19-060 |
| Appellee | Trial Court No. 2018 CR 468 |
| v. | |
| Eric Kanable | **DECISION AND JUDGMENT** |
| Appellant | Decided:  September 4, 2020 |

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from the July 3, 2019 judgment of the Wood County Court of Common Pleas after appellant, Eric Kanable, was found guilty of theft and sentenced to 11 months in prison.  For the reasons that follow, we affirm.

{¶ 2} Appellant sets forth three assignments of error:

I. The trial court erred in allowing testimony as to the meaning of retail shelf labels, and Walmart store[-]wide annual inventory in the context of divining [sic] an amount of merchandise allegedly stolen on a particular date, and other hearsay statements[.]

II. The trial court abused its discretion when it permitted testimony, over objection, of Appellant's suspected involvement in an uncharged crime in another jurisdiction based upon Appellant being "similar" in looks to the perpetrator.

III. The prosecution failed to present sufficient evidence to prove every element of the crime charged beyond a reasonable doubt.

**Facts**

{¶ 3} On September 28, 2018, appellant was charged with a theft offense in Perrysburg Municipal Court, in Wood County, Ohio. Appellant was alleged to have stolen a trash bag full of cigarettes from the Perrysburg Walmart. The case was bound over to the Wood County Court of Common Pleas, and on December 6, 2018, appellant was indicted on one count of theft. Appellant pled not guilty.

{¶ 4} On June 17, 2019, a jury trial was held. Appellant was found guilty of theft, with a finding that the property stolen was valued at more than $1,000 but less than $7,500, a violation of R.C. 2913.02(A)(1) and (B)(2), a fifth-degree felony.

2.

{¶ 5} On July 2, 2019, a sentencing hearing was held, and appellant was sentenced to a term of incarceration of 11 months. The trial court found "for reasons stated on the record * * * a prison term is consistent and the [appellant] is not amendable to community control sanctions."

{¶ 6} Appellant timely appealed.

## Trial

{¶ 7} At trial, the state presented the testimony of three witnesses. The relevant testimony is summarized below.

## Justin Swihart

{¶ 8} Swihart testified he is an asset protection associate on the loss prevention team at the Perrysburg Walmart. On February 15, 2017, he was informed of the theft of multiple cartons of cigarettes during the overnight hours of Valentine's Day, and he investigated the theft by reviewing video surveillance footage from the store's closed circuit surveillance system. Swihart explained the video surveillance system, which included over 70 cameras throughout the store, was maintained by a security company whose server stores the video for 45 days before the video starts falling off and is no longer recoverable.

{¶ 9} Swihart testified regarding the video footage and still-shots from the store's cameras in the early morning of February 14, 2017, which the state introduced into evidence. At 4:11 a.m., an unidentified man ("the man") enters the store via the doors by the grocery section, walks around and goes to Register 12, where the smoke shop is

3.

located. At 4:26 a.m., the man gets on his hands and knees and crawls around through a metal gate and past a yellow security gate to where the cigarettes are situated. The man pulls out a black garbage bag with yellow drawstrings ("the bag"), takes cartons of cigarettes and places them into the bag. At 4:28 a.m., the man crawls out of Register 12's area, stands up and walks away. The bag, which is "reasonably full," is still behind Register 12.

{¶ 10} At 4:30 a.m., the man goes back to Register 12, retrieves the bag, walks to Register 17, and sets the bag down. Register 17 is close to the doors by the general merchandise section of the store. At 4:39 a.m., the man exits the store, without the bag, using the doors by the grocery section.

{¶ 11} The man returns to the store, and at 4:58 a.m., he goes back to Register 17, picks up the bag and walks towards Register 20, which is the closest register to the general merchandise doors. At 5:07 a.m., there is a still-shot of the man leaving the store, using the general merchandise doors. Swihart noted the general merchandise doors are closed, but not locked, from 10:00 p.m. to 7:00 a.m., and the lights are turned off.

{¶ 12} Swihart then offered testimony relating to other video surveillance footage from the store's cameras in the early morning of February 14, 2017, which he viewed but which footage was no longer available. Swihart described the technical difficulties he encountered while trying to burn the video from the system to a disk, and noted the footage automatically fell off of the system after 45 days. Swihart testified this footage

4.

showed the man enter the store through the general merchandise doors, pick up the bag from Register 20, and leave the store with the bag, using the general merchandise doors.

{¶ 13} Swihart testified the amount of missing cigarettes was determined by taking an inventory of the cigarettes section two days after the theft. An inventory is conducted by the department manager on a weekly basis, by going through each item in a section, scanning the shelf labels and doing a physical count of everything in one section of the department per day. The shelf labels, which provide the price of the cigarettes, were collected and used to calculate the amount and cost of product lost. Swihart processed the "theft numbers" using a training receipt, which adds up the amount of items stolen and their value, but does not affect the store's inventory. There were more than 73 items stolen, and the total amount of the items was $2,852.28. The state introduced the shelf labels and training receipt into evidence.

**John Growden**

{¶ 14} Officer Growden, with the Village of Holland Police Department, testified the Walmart store in Holland, Ohio, is in his jurisdiction. In the spring or summer of 2017, a theft of cigarettes occurred at the Holland Walmart. Officer Growden learned of the theft after a loss prevention officer at the Holland Walmart was advised by an employee that the cigarette audit was off. The loss prevention officer then viewed the security video and found a suspect by an unmanned register who was involved in the theft of cartons of cigarettes. The suspect was unknown at that time.

5.

{¶ 15} At a later date, a similar-looking male was reportedly seen in the Holland Walmart. The loss prevention officer followed the male who was again at the unmanned registered where the cigarettes are located. The male was spooked, left the store and got into a vehicle with an Ohio license plate. The loss prevention officer was able to figure out the license plate, and Officer Growden looked up the plate, which came back to a female. Officer Growden conducted a search of the female on social media and found a Facebook page with pictures of a female and a white male, who looked like the suspect. Officer Growden pulled up an image from the Bureau of Motor Vehicles ("BMV") of the female owner of the vehicle, and the female connected to the registration and the female connected to the Facebook page were similar. Officer Growden testified that based on his training and experience, he believed the male in the Facebook page picture is appellant. Officer Growden was shown a picture of the man suspected of theft at the Perrysburg Walmart and the officer opined it resembled the same individual, appellant. The state introduced into evidence the Facebook page and pictures.

**Dustin Glass**

{¶ 16} Detective Glass of the Perrysburg Township Police Department testified there is a Walmart store in his jurisdiction, and road patrol officers were contacted by that Walmart a couple of days after the February 14, 2017 theft of cigarettes. The officers took a report but since there was no suspect information, the report was forwarded to the detective bureau and assigned to Detective Glass.

6.

{¶ 17} An asset protection associate, Chelsea Bell, contacted Detective Glass and provided him with a statement from Swihart, still-photos, the surveillance video and the training receipt stating the amount of the loss. Several months later, Bell again contacted Detective Glass, and notified him that they identified an individual at the Holland Walmart who was doing the same thing at the Perrysburg Walmart. Detective Glass was provided appellant's name with a driver's license and birth date, and ran the information through LEADS. The detective observed a BMV picture of appellant, compared it to the surveillance video and still-photos and concluded it was the same person. The detective also viewed the Facebook pictures introduced into evidence by the state and opined that in his training and experience, the male in the picture is appellant.

### First Assignment of Error

{¶ 18} Appellant argues Swihart was not a qualified person to testify regarding the reliability of shelf labels for use in determining "an acute theft." Appellant contends the Walmart department manager should have testified about the day-to-day reliability of on-hand counts of products in determining that a specific loss occurred on a certain day. Appellant maintains the state had no evidence of the quantity of cigarettes taken, and due to the complex nature of retail loss, it is unfair and prejudicial to presume Walmart relies on shelf labels to determine the amount of theft. Appellant queries "[m]ay the prosecution rely upon the 'business records' hearsay exception to admit evidence of weekly inventories conducted two years earlier by a different person * * *?"

7.

## Standard

**{¶ 19}** "On appeal, challenged hearsay is subject to de novo review under the applicable hearsay rule, rather than the more deferential review employed for discretionary rulings." *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442 (6th Dist.), ¶ 32.

## Business Records

**{¶ 20}** Evid.R. 803(6) provides the business records exception to the rule against hearsay. In order for a record to qualify for admission under this rule, the business record must comply with the following four elements:

> "(i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.'" (Citation omitted).

*State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

**{¶ 21}** A person who is qualified to lay the foundation for a business record must possess a working knowledge of the specific record-keeping system which produced the record, and must be able to vouch from personal knowledge that the record was kept in the regular course of business. *Deutsche Bank Natl. Tr. Co. v. Boreman*, 6th Dist. Ottawa No. OT-18-031, 2020-Ohio-3545, ¶ 40.

8.

**Analysis**

{¶ 22} The crux of appellant's assigned error is that the state did not lay a foundation for the admissibility of the shelf labels because the Walmart department manager, who actually conducted the weekly inventory and could attest to the reliability of using shelf labels to determine a theft, did not testify.

{¶ 23} Upon review, the record shows Swihart, in his position as a loss prevention associate, was exposed to the regularly conducted business activities of the Perrysburg Walmart. Swihart was familiar with and had a working knowledge of the inventory procedures at Walmart, including the use of shelf labels. Swihart testified an inventory was conducted two days following the theft, and the shelf labels were also gathered at that time by the department manager, whose job duties included inventorying that department on a weekly basis. Swihart then used the compiled information to generate a training receipt to establish the amount and value of the cigarettes.

{¶ 24} We find Swihart was qualified to attest to Walmart's normal business practices of having its department manager conduct weekly inventories and using shelf labels for inventory purposes and to determine if a theft had occurred. Swihart was also qualified to testify to the use of a training receipt in calculating the number of items stolen and the amount of loss incurred by Walmart. We further find the shelf labels and training receipt meet the remaining requirements for admissibility under the Evid.R. 803(6) business-records hearsay exception, as the records were regularly recorded in a regularly conducted activity and were entered by a person with knowledge of the act,

9.

near the time of the theft. Accordingly, appellant's first assignment of error is not well-taken.

## Second Assignment of Error

{¶ 25} Appellant argues Officer Growden's testimony identifying appellant based on being "similar" in looks to a perpetrator with suspected involvement in an uncharged crime at the Holland Walmart is inadmissible. Appellant asserts this other bad acts evidence was poor and was the only testimony offered by the state that appellant was involved in the theft of cigarettes at the Perrysburg Walmart. Appellant also submits Officer Growden's alleged identification of him relies on statements of a non-testifying Walmart employee, which are hearsay, outside of any exception, and prejudicial, as the only testimony which identifies appellant.

## Law

{¶ 26} Evid.R. 404(B) states in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 27} Evidence of another crime which is unrelated to the offense for which the offender is on trial is admissible to establish the identity of the offender as the perpetrator of the crime with which he is charged. *State v. Woodard*, 68 Ohio St.3d 70, 73, 623

10.

N.E.2d 75 (1993). The introduction of another crime gives rise to a reasonable inference that if the offender is the perpetrator of the uncharged crime, he is also the perpetrator of the charged crime. *Id. See also State v. Johnson*, 6th Dist. Lucas No. L-01-1243, 2002-Ohio-5206, ¶ 27. Other acts evidence can be admitted "to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." *State v. Smith*, 49 Ohio St.3d 137, 141, 551 N.E.2d 190 (1990).

{¶ 28} In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20, the Supreme Court established the following three-part test to determine whether to admit Evid.R. 404(B) testimony:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

{¶ 29} "[I]f the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial." *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001).

**Analysis**

{¶ 30} With respect to appellant's complaint that Officer Growden's testimony regarding statements made to him by a Walmart employee identifying appellant was inadmissible hearsay, we find the admission of this testimony, even if it was inadmissible hearsay, was harmless error. *See* Crim.R. 52(A). Upon review, the record shows Officer Growden testified that he conducted his own investigation and research after receiving the information regarding appellant, and arrived at the same conclusion as the Walmart employee. In addition, surveillance footage from the Perrysburg Walmart was played for the jury, still-photos from the footage and the Facebook page with photos were provided to the jury, and Swihart testified as to what the surveillance footage, including the footage which had been lost, depicted. Therefore, Officer Growden's statements as to what the Walmart employee told him were cumulative and had no effect on appellant's substantial rights.

{¶ 31} Regarding the other acts evidence, after considering the *Williams* three-step test, we find this evidence was properly admitted by the trial court. Officer Growden's testimony was relevant to the jury's consideration of the theft charge, as the testimony was related to the method and manner in which appellant stole or attempted to steal cartons of cigarettes from Walmart. The male in the Holland Walmart acted in a similar

12.

fashion as the man in the Perrysburg Walmart by hanging out by the unmanned cigarette aisle, waiting for the opportunity to steal cartons of cigarettes undetected by customers or employees. The shared aspects between the theft at the Perrysburg Walmart and the theft and suspected attempted theft of the Holland Walmart were pertinent to appellant's identity as the perpetrator of the offenses. Further, the probative value of the other acts evidence was not substantially outweighed by the danger of unfair prejudice, since the evidence does not tend to stir the jury's emotional sympathies, induce a sense of horror or appeal to an instinct to punish. In addition, the trial court gave a limiting instruction, and there is no indication in the record that the jury was unable to comprehend and follow the limiting instruction. Accordingly, appellant's second assignment of error is not well-taken.

### Third Assignment of Error

{¶ 32} Appellant argues the state failed to present sufficient evidence to prove every element of the crime beyond a reasonable doubt. Specifically, appellant contends the state did not offer sufficient evidence that the value of cigarettes taken was over $1,000. Appellant asserts the only evidence of the value of cigarettes stolen was the inadmissible testimony of Swihart, which was not sufficient because it was an extrapolation based on a weekly inventory, which was not presented in the context of other weeks, or other instances of loss.

13.

## Standard

{¶ 33} In order to determine whether the evidence is legally sufficient to support a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

## Law

{¶ 34} R.C. 2913.02 provides the definition of theft, and states in relevant part:

(A) No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over either the property * * * in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

* * *

(B)(1) Whoever violates this section is guilty of theft.

(2) * * * If the value of the property * * * stolen is one thousand dollars or more and is less than seven thousand five hundred dollars * * * a violation of this section is theft, a felony of the fifth degree.

## Analysis

{¶ 35} Upon review, appellant's conviction for theft is supported by sufficient evidence. The state presented three witnesses to testify regarding the theft which

14.

occurred at the Perrysburg Walmart during the early morning hours of February 14, 2017, and the investigation into the theft, including the amount and value of the missing cigarettes, and how the perpetrator was ultimately identified. The state also introduced into evidence the video surveillance footage and still-shots from the Perrysburg Walmart's cameras in the early morning of February 14, 2017, the shelf labels and the training receipt which were used to calculate the amount and value of the stolen cigarettes, and the Facebook page and photos used to identify appellant.

{¶ 36} Viewing the evidence in a light most favorable to the state, we find the state presented sufficient evidence for a rational trier of fact to find all of the essential elements of the crime of theft proven beyond a reasonable doubt. Accordingly, appellant's third assignment of error is not well-taken.

{¶ 37} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of the appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

_____
JUDGE

Arlene Singer, J. _____

Gene A. Zmuda, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.