[Cite as *N.T. v. J.W.*, 2024-Ohio-1513.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

N.T.                                                    Court of Appeals No.  E-23-021

      Appellant                                 Trial Court No.  2016SU00138

v.

J.W.                                                    **DECISION AND JUDGMENT**

      Appellee                                   Decided: April 19, 2024

\* \* \* \* \*

Mark P. Smith, for appellant.

Michele A. Smith, for appellee.

\* \* \* \* \*

**DUHART, J.**

**{¶ 1}** This is an appeal from the February 17, 2023 judgment of the Erie County

Court of Common Pleas, Juvenile Division, by appellant, N.T., the biological father of

the minor child, I.W.  In its judgment, the juvenile court denied father's objection to the

magistrate's decision, and denied his request for a hearing.  For the reasons that follow,

we affirm the judgment.

**{¶ 2}** Father sets forth two assignments of error:

A. The Trial Court Erred in Admitting Hearsay Evidence Over Objection[.]

B. The Trial Court Erred in Imputing Defendant's Income and Failing to
Impute Plaintiff's Income[.]

## Background

**2016**

{¶ 3} In July 2016, appellee, J.W., gave birth to I.W. Mother and father were not married to each other, although father was married to another woman ("wife") at the time of I.W.'s conception, and throughout this case. In September 2016, the Erie County Child Support Enforcement Agency ("CSEA") established I.W.'s paternity through DNA testing.

{¶ 4} In November 2016, CSEA issued an administrative order for child support and medical support for I.W. Father was ordered to pay $285.69 monthly for support, plus a processing fee,[1] when he provided health insurance for I.W., or $268.30 monthly for support and $77.75 monthly for cash medical support when he did not provide health insurance. Father filed, in juvenile court, an appeal to the administrative order.

**2017**

{¶ 5} On June 5, 2017, an evidentiary trial on father's appeal of CSEA's administrative order was held before a juvenile court magistrate. A CSEA hearing officer testified, as did mother and father.

{¶ 6} On August 28, 2017, the magistrate's decision was issued, in which the magistrate recommended, inter alia, that: mother's 2016 income of $7,538.86 should be

---

[1] All monthly support payments referenced herein include a processing fee.

2.

used for child support purposes, as she was voluntarily unemployed; and, father's 2016 actual income of $22,640 should be used for child support purposes.

{¶ 7} Neither parent filed objections to the magistrate's decision.

{¶ 8} On September 19, 2017, the juvenile court issued a judgment entry in which it adopted the magistrate's decision, and ordered, inter alia, that father pay child support for I.W. in the amounts set forth in that decision.

**Child Support Enforcement Agency Administrative Proceedings and Record**

**2020**

{¶ 9} On November 12, 2020, mother filed with CSEA a request for administrative review and adjustment of the child support order. Neither parent requested a hearing.

{¶ 10} On December 14, 2020, mother filed her child support financial affidavit with CSEA, and two days later, father filed his child support financial affidavit with CSEA.

**2020-2021**

{¶ 11} From December 17, 2020 through January 6, 2021, an administrative review of the parents' child support obligations was held by Lynne Weaver, a CSEA modification specialist ("CSEA specialist") using the modification packet ("the packet") she created.

{¶ 12} In the administrative adjustment recommendation, dated January 27, 2021, Weaver recommended that imputed annual income of $42,350 be used for father,

3.

mother's actual income of $13,440 be used, and effective January 1, 2021, father pay $503.07 monthly for current child support, $23.70 monthly for cash medical support, $50 monthly as payment on arrears and 73.16% of the cost of uninsured medical expenses for I.W. that exceeds cash medical support payments, and mother pay 26.84% of the cost of uninsured medical expenses for I.W. which exceeds cash medical support payments and provide health insurance for I.W.

{¶ 13} Father then requested an administrative review hearing of Weaver's recommendation, and filed an objection letter asking that his actual income be used in calculating his child support obligation. Thereafter, the hearing was held before a CSEA administrative hearing officer ("the hearing officer").

{¶ 14} On June 9, 2021, the hearing officer issued the administrative hearing decision, finding father's objection to Weaver's administrative adjustment recommendation not well-taken and denied.

**Juvenile Court Proceedings and Record**

**2021 (continued)**

{¶ 15} On June 22, 2021, father filed, with the juvenile court, his appeal of the hearing officer's administrative hearing decision, and a motion to modify child support.

{¶ 16} Also in 2021, CSEA filed with the court a motion for order to show cause, which alleged father failed to make child support payments as ordered by the court on September 19, 2017. Subsequently CSEA voluntarily dismissed its motion on the ground that father had been in recent compliance with the order to pay support for I.W.

4.

**2022 - Proceedings Before the Juvenile Court Magistrate**

{¶ 17} On April 26, 2022, a hearing was held before a magistrate in juvenile court on father's appeal of the administrative hearing decision, and motion to modify support.

{¶ 18} On August 18, 2022, the magistrate's decision was filed, in which the magistrate recommended that father's appeal of the administrative hearing decision be denied, father's motion to modify be denied, and the hearing officer's administrative hearing decision be adopted as a court order.

{¶ 19} On August 29, 2022, father filed an objection to the magistrate's decision, and requested a hearing on the magistrate's decision and father's objection thereto.

**2023 - Juvenile Court's Judgment Entry**

{¶ 20} On February 17, 2023, the juvenile court issued its judgment entry, in which it noted that the matter before it was the magistrate's decision and father's objection, as mother did not respond to father's objection. The court stated it reviewed "the pleadings in this matter as well as the Magistrate's Decision. No transcript [of the hearing before the magistrate] or alternative was provided by Father."

{¶ 21} The court ordered that father's objection to the magistrate's decision and request for hearing be denied and dismissed. The court further ordered, inter alia, that father pay child support for I.W. in substantially the same amounts set forth in CSEA specialist's January 27, 2021 administrative adjustment recommendation (which the magistrate then recommended that the juvenile court adopt).

5.

**{¶ 22}** On March 16, 2023, father filed his notice of appeal with this court requesting that we reverse the juvenile court's February 17, 2023 judgment, and remand the matter to the juvenile court for its determination of child support based on the parties' actual income figures, or for the juvenile court to impute both parties' incomes at the appropriate amount for child support calculation purposes.

**{¶ 23}** On April 24, 2023, father filed, in juvenile court, the transcript of the hearing before the magistrate ("the transcript").

**{¶ 24}** On April 25, 2023, father filed the transcript in this court.

**First Assignment of Error**

**{¶ 25}** Father presents two arguments: the trial court erred when it admitted hearsay evidence, over his objection; and, CSEA failed to meet the business records exception under Evid.R. 803(6).

**{¶ 26}** Father argues the packet prepared by CSEA specialist Weaver consists of double hearsay because the packet used "out of court figures which cannot be verified as to the accuracy, timeliness, or any other measurable criteria of how O-NET compiles or creates its records database." Father contends O-NET and its records "as well as [CSEA's] recitation of the Administrative Review Hearing, its content and overall findings, constitute the first layer of hearsay." Father asserts the second layer of hearsay occurred when Weaver testified that she compiled the figures into her report, and also testified "to the contents therein, thus, [CSEA] prepared the report adopting unverifiable hearsay, and herein proffered the same into the record."

6.

**{¶ 27}** Father argues Weaver did not properly authenticate the documents in the packet, as she never testified when the packet was created or recorded, and father objected to the admission of the packet for that reason. Father further submits Weaver "cannot testify to the accuracy of the records contained or used by O-NET, as [she] has no personal knowledge regarding the accuracy, timeliness, or business practices of O-NET, nor has there been any testimony that O-NET falls under any one of the reliable exceptions found in the Ohio Rules of Evidence." In addition, father claims CSEA failed to meet the business records exception under Evid.R. 803(6), so the packet "cannot, as a matter of law, be admitted and considered as evidence by the Court."

**{¶ 28}** We will examine father's two arguments together.

**Standards of Review**

**{¶ 29}** A trial court typically has broad discretion as to the admissibility of evidence in a particular case, "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). "'On appeal, challenged hearsay is subject to de novo review under the applicable hearsay rule, rather than the more deferential review employed for discretionary rulings.' *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442 (6th Dist.), ¶ 32." *State v. Kanable*, 2020-Ohio-4335, ¶ 19 (6th Dist.).

7.

**Preliminary Matter**

{¶ 30} As noted by the juvenile court in its judgment father did not file the transcript with the juvenile court.  However, the record reflects that after father filed his appeal of the court's judgment, he filed the transcript in the juvenile court and this court.

**Juvenile Court Record and Appellate Court Record**

{¶ 31} Juv.R. 40(D)(3)(b) "Objections to Magistrate's Decision" provides in pertinent part:

(i) Time for Filing.  A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision[.]

. . .

(iii) Objection to Magistrate's Factual Finding; Transcript or Affidavit.  An objection to a factual finding, whether or not specifically designated as a finding of fact . . ., shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. . . . The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause.

{¶ 32} Since father did not file the transcript with the juvenile court within 30 days after he filed his objection to the magistrate's factual findings, as required by Juv.R. 40(D), the transcript could not be considered by the court when it ruled on father's

8.

objection.  Thus, we find that the transcript was not a part of the record before the juvenile court.

{¶ 33} On appeal, our review is limited to the record which was before the juvenile court.  App.R. 9(A)(1) prescribes that the record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court[.]"  Moreover, in *State v. Terrell*, 2022-Ohio-4312, ¶ 20 (6th Dist.), we stated that "[t]he duty to provide a transcript for appellate review falls upon the appellant because it is the appellant who bears the burden of showing error by reference to matters in the record.  *Knapp v. Edwards Lab*[*oratories*], 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980); *see also* App.R. 9(B)."

{¶ 34} Given that the transcript was not a part of the record before the juvenile court, the transcript is not a part of the appellate record.  "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."  *State v. Ishmail*, 54 Ohio St.2d 402, paragraph one of the syllabus (1978).  When a "transcript necessary for resolution of assigned errors [is] omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."  *Knapp* at 199.  However, an appellate court can evaluate the legal conclusions reached by a trial court based upon the trial

9.

court's factual findings. *Fifth Third Mtge. Co. v. Berman*, 2019-Ohio-1068, ¶ 16 (10th Dist.).

## Appellate Record

{¶ 35} In the record before us, the following is relevant to father's first assigned error.

*The Packet, Prepared by CSEA Specialist Weaver*

{¶ 36} Upon review, the packet included the following with respect to mother and/or I.W.: mother's 2019 W2; Medicaid health insurance cards for mother and I.W.; Metro housing change in housing assistance payment document; mother's financial affidavit - she is currently unemployed due to day care closing from COVID-19. As to father, the packet included: father's financial affidavit; 2017, 2018 and 2019 tax forms for father and/or his wife and/or TCC (an S Corporation).

{¶ 37} Also in the packet was Weaver's case narrative, relating to the modification review, which provided, inter alia, that: she reviewed father's paperwork; per his W2s his individual total gross income was $8,640, which is under the average earnings for the area and indicates he makes $2.96 an hour; after reviewing his profession (he is classified as a carpenter), the bureau of labor statistics and O Net had the best matching description of his type of work; using the Northeastern Ohio nonmetropolitan area, median income is $42,350 yearly, which is going to be his imputed total gross income; he has two other minor children not a party to this case for which he received credit; and, she used mother's 2019 income from Discount Drug-Mart Pharmacy, for total gross earnings of

10.

$13,440. Weaver "ran guidelines and the new recommendations" for father's child support payments, eff. 1/1/2021, were: $537.31 monthly; arrears $50 monthly. Weaver "[p]repared recommendations . . . [m]ailed out mod packets."

*Administrative Hearing Decision*

{¶ 38} In his June 9, 2021 administrative hearing decision, the hearing officer set forth, inter alia:

[CSEA] . . . issued an Administrative Adjustment Recommendation amending [upwards, father's] child support obligation[.] . . . [CSEA] found . . . that [father] is capable of earning . . . the average income for a carpenter in Northeastern Ohio nonmetropolitan area as reported on the O-Net online website.

. . . [Father] submitted his timely objection . . . indicating that his income has not increased over the last three years and that there is a decline in the construction industry due to COVID and rising material costs.

[Father] attended the Administrative Modification hearing by telephone with his counsel . . . [and] . . . reiterated . . . that he only earns the amount provided in his taxes based on a lack of work and the cost of doing business. This Hearing officer inquired of [father] to his current expenses. [Father] indicated that his current house payment is $787/month ($9444 annually), he pays approximately $250 per month in water and electric and $90 per month in natural gas for a monthly utility expense of $340 per

11.

month ($4080 annually). [Father] shares his home with his wife, two minor children and [an] adult child who is attending college. [Father] also has a truck payment for a 2020 Dodge Ram in the amount of $600 per month which is paid for out of the busines[s]. [His] wife is also employed by [TCC] and [he] reported she earned $5160 in 2019. [Father] stated at the hearing and put in his Child Support Financial Affidavit that he pays himself $12.00 per hour . . . and works approximately 20-30 hours per week. When annualized, even this amount would be $15,600 per year of income at 25 hours per week.

[Mother's] income was placed at $13,400 per year based on her employment for 2019. [Her] income was not an issue for purposes of this hearing.

After consideration of the objection by [father] as well as the testimony presented at the Hearing on this matter, this Hearing officer finds that the amount of income attributed to [father] is reasonable and appropriate and in the best interests of the child herein. [Father] is not disabled or otherwise incapable of working. An income of $5983 is not reasonable or believable for a person of [father's] abilities. In an era where fast food workers in the area are earning between $13-$17 per hour, it is not fair or equitable to place [father's] income at $5893 annually. Further, when the living expense[s] that were testified to by [father] are added into

12.

the equation, it becomes a mathematical impossibility that [he] can maintain his household on his reported income - even when the income of [his] spouse earned from the same business is taken into consideration. In conducting its review[,] [CSEA] placed [father] at an income that is based on the average income for persons with his occupation in his geographic area. This Hearing Officer finds the imputation to be reasonable and based on reliable and available data.

Therefore, [father's] objection [to] the Administrative Adjustment Determination is found not well taken and is hereby denied.

*Magistrate's Decision*

{¶ 39} In the August 18, 2022 magistrate's decision, the magistrate provided a synopsis of the testimony given by the witnesses at the hearing held before the magistrate. The relevant information from the synopsis of Weaver includes:

Lynne Weaver testified she is a modification specialist, case worker for . . . CSEA . . . [and] [s]he had worked [there] for almost four years. . . . [W]hen a document gets produced it is scanned into [CSEA's] database and noted in the SETS system . . . [which] is the records for [CSEA] . . . [and which] keeps track of all (child support) payments. She . . . has access to SETS and she is a records keeper for [CSEA]. . . . She created [the packet, which] contains all the documents concerning a child support modification. It contains any documents submitted by the parties . . . [and] the packet was . .

13.

. scanned into [CSEA's] system and is a business record of the CSEA. . . . [A]s her job as a . . . Specialist she does (child support) modification every day.  [CSEA] moved that [the packet] be admitted into evidence. . . . [Father's] objection was overruled and [the packet] was admitted into evidence. . . .

[Weaver] was assigned to do the modification for [the parents].  She gathered information . . . [and] . . . requested information from the parties.  She has access to a state wage database and the Work Number, so sometimes she can verify information if it's reported. . . . [A]fter compiling wage information on the parties she analyzes it and comes up figures for the child support modification.  She also has to determine whether to use actual wages or imputed wages. . . . She . . . used imputed wages for [father], but not for [mother]. . . . [F]or [father's] income she reviewed the documents he sent in; looked at his employer verifications; and then got imputed income from the US Labor Department.  She imputed him income based upon 'carpenter[.]'  She is aware [father] owns [TCC].  She used wages for a carpenter who does not own his own business.  She used O*NET OnLine to get that wage information and O*NET gets its information from the US Department of Labor.  She got the figures from O*NET in December of 2020. . . . [CSEA] do[es] impute income for individuals when . . . [the] income is less than minimum wage. . . . [S]he

did not look at imputed wages for [mother] because [her income] was above the threshold[.] [I]t is standard practice by [CSEA] to use O*NET as a resource for wage information. . . . [S]he thought it was appropriate to impute income to [father]. The figure from O*NET is based on location. You put in a zip code and it gave her a recommendation for Northeastern Ohio non-metropolitan areas.

{¶ 40} In the "Decision" section of the magistrate's decision, the magistrate found, inter alia:

[M]other "requested a review of the September 17, 2017 [child support] . . . [and] [a]cting in accordance with OAC Ann. 5101:12-60-05.3(G) [which controls the administrative review process for the CSEA][,] the CSEA gathered information and documents for both parties[.] The administrative review began on December 17, 2020[,] and the Administrative Adjustment Recommendation, dated January 27, 2021, . . . complied with R.C. §3119.02 and OAC Ann. 5101:12-45-10[.]

*Judgment Entry*

{¶ 41} In the juvenile court's February 17, 2023 judgment entry, the court addressed father's objection to the magistrate's decision that, inter alia, the magistrate erred in admitting the packet (which consisted of the documentation that CSEA used to arrive at its review decision). The juvenile court set forth:

15.

As noted above, no transcript of the proceeding was provided so review of the record surrounding the admission and Father's objection cannot be made. . . . Father specifically argues that . . . Weaver failed to testify as to when [the packet] was created or recorded. Without testimony about when the [packet] was created, the [packet] should not have been admitted according to the objection. However, the Magistrate's Decision, in the section titled 'Testimony,' clearly outlines how the [packet] was created by the witness in fulfillment of her duties. Embedded in that testimony and the [packet] are the timeframes that the documents [in the packet] were submitted or created, starting with the Mother's request for review and culminating with Father's Appeal of CSEA's determination. The documents organized in the [packet] were recorded and entered into the CSEA system as records of regularly conducted business activity, according to the testimony[, and] [t]he documents . . . were required to be requested, created and recorded by statute and regulation. See R.C. §3119.66 and OAC Ann. 5101:12-60-05.6 (N) which requires CSEA to submit the Administrative Adjustment Recommendation, the Administrative Adjustment hearing Decision, and any attachments. Also, 'CSEA shall present to the court the facts from the administrative adjustment review and hearing to assure that the guidelines were correctly applied and to explain the JFS 07724.' OAC Ann. 5101:12-60-05.6(O).

Based on the above, the objection that there was no establishment of the creation or recording of the records is, therefore, without merit.

Father does not contest the [packet's] other foundational elements, i.e. regularly recorded in a regularly conducted activity, etc... and based on this and above, this objection fails and is denied.

. . .

[Weaver] testified that when a person, who is able bodied and does not earn minimum wage or work full-time, she investigates to determine what skills they have and makes an imputation of income, when appropriate. Specifically here, since Father had a long history of working as skilled labor she investigated what that type of employment would make in our area of the country. . . . After obtaining that information, the investigator found that imputing $42,350 was reasonable. Father objects to the Court considering this because the information was obtained from O*NET which reports wage information from the U.S. Department of Labor.

Since [Weaver] didn't create that website and compile the data, Father argues that its use is not permitted. However, the testimony explained that using O*NET is standard practice in her field. Again, the record and its[] source are regularly used in the course of CSEA's regular business and it's required to be provided to the Court by statute and

regulation as stated above to explain their determinations. CSEA's use of an employee carpenter's wage, as opposed to a carpenter owner, seems reasonable and could be argued to be generous under the circumstances of this case.

## Law

**Rules of Evidence**

{¶ 42} Evid.R. 801(A) provides that a statement is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."

{¶ 43} Evid.R. 801(C) sets forth that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."

{¶ 44} Evid.R. 802 states that "[h]earsay is not admissible except as otherwise provided by . . . these rules, or by other rules prescribed by the Supreme Court of Ohio."

{¶ 45} Evid.R. 803 sets forth exceptions to the hearsay rule and states, in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person

18.

with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**Case Law**

{¶ 46} In *State v. Davis*, 2008-Ohio-2, ¶ 171 ("the *Davis* case"), the Supreme Court of Ohio set forth four elements which must be established in order for evidence to qualify, and be admitted, as a business record under Evid.R. 803(6): (1) the record must be one regularly recorded in a regularly conducted activity; (2) the record must have been entered by a person with knowledge of the act, event or condition; (3) the record must have been recorded at or near the time of the transaction; and, (4) a foundation of authenticity must be laid by the custodian of the record or some other qualified witness. The court further set forth that [[e]ven after these elements are established, however, a business record may be excluded from evidence if 'the source of information or the method or circumstances of preparation indicate lack of trustworthiness.' Evid.R. 803(6)."

{¶ 47} In order to lay a proper foundation, "'the testifying witness must possess a working knowledge of the specific record-keeping system that produced the document.' *State v. Davis*, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362 (1991)." *LaBounty v. Big 3 Automotive*, 2019-Ohio-1919, ¶ 52 (6th Dist.).

### Analysis

{¶ 48} In our de novo review of the record before us, we apply the four elements of the *Davis* case to the evidence in the record in order to determine whether the packet qualifies as a business record under Evid.R. 803(6).

**The *Davis* Case - First and Second Elements**

{¶ 49} Upon review, we find that the record before us includes evidence that the packet is regularly recorded in a regularly conducted activity of CSEA, when a parent seeks a modification of child support. Also in the record is evidence that the packet and its documents were entered by CSEA specialist Weaver, who had knowledge of the act, event or condition.

{¶ 50} As mentioned above, the juvenile court's judgment entry and the magistrate's decision set forth Weaver's summarized testimony that she created the packet in fulfillment of her duties as a CSEA specialist, CSEA imputes income for parents whose income is less than minimum wage, the use of O-NET is standard practice in her field, O-NET gets its information from the U.S. Department of Labor, she used O-NET and received wage information for a carpenter, she imputed income to father, and

20.

being a records keeper for CSEA, she recorded and entered the documents in the packet into CSEA's system as records of regularly conducted business activity.

**The *Davis* Case - Third Element**

{¶ 51} In the record is evidence that Weaver recorded the packet at near the time she created it. As stated above, the juvenile court's judgment entry and the magistrate's decision conveyed that Weaver obtained figures from O-NET in December 2020, and began the administrative review on December 17, 2020. Weaver's case narrative, in the packet, also shows that the administrative review of the parents' child support obligations was scheduled December 17, 2020, and the review was completed by January 6, 2021.

**The *Davis* Case - Fourth Element**

{¶ 52} Included in the record is evidence that Weaver, a record keeper for CSEA, laid a foundation of authenticity of the packet, its documents and the sources of the documents, which showed that as a modification specialist she generated the packet, using CSEA's standard practices, in the regular course of CSEA's business of reviewing child support orders and providing modifications to those orders. Weaver also provided evidence that the packet was kept in the regular course of CSEA's business.

**The *Davis* Case - Trustworthy Element**

{¶ 53} The appellate record reflects that father failed to present evidence that the source of information in the packet and/or the method or circumstances of the preparation of the packet were not trustworthy.

21.

**Conclusion**

{¶ 54} Based upon the foregoing, we conclude the packet falls under the Evid.R. 803(6) business records exception, and the juvenile court did not err when it admitted the packet into evidence. Accordingly, we find father's first assignment of error not well-taken.

**Second Assignment of Error**

**Father's Arguments**

{¶ 55} Father argues the juvenile court erred in imputing his income and failing to impute mother's income. He asserts CSEA imputed his income based on the faulty premise that he "operates as a carpenter in nonmetropolitan northeastern Ohio, despite failing to inquire as to the actual nature of Father's employment." In addition, father contends CSEA failed to take into consideration mother's degree in medical administrative assisting or her certification as a pharmacy technician when calculating her income.

{¶ 56} Father maintains CSEA acted in a manner that was arbitrary, capricious, and against the manifest weight of the evidence when it arbitrarily determined to impute income to him "in a field in which he is not, has not, and has never been employed." He also claims CSEA acted in a similarly arbitrary manner when it decided not to impute income to mother "even at minimum wage, despite her having numerous credentials. Likewise, [CSEA] failed to consider Mother's voluntary underemployment or unemployment entirely, as did the court."

22.

**{¶ 57}** Father submits that "it is a matter of fundamental fairness that what's good for the goose is good for the gander; if Father's income should be imputed then so should Mother's; especially given the evidence provided to the trial court of Mother's lack of effort into securing substantive employment or utilizing her credentials in any fashion whatsoever, as well as deliberately avoiding seeking alternative or even the same prior childcare provider to enable fulltime employment."

**{¶ 58}** Father observes "the trial court's decision in 2017 held that, as a matter of fundamental fairness, that using Mother's actual income figures, despite her being voluntarily unemployed, that Father's actual income figures should be used as well." Father argues that "[d]espite this precedent reached by the same trial court a mere three years prior, the trial court failed to identify the basis for the change in position."

**Law (set forth by Father)**

**{¶ 59}** According to father, "[w]hen calculating the amount of child support owed, the trial court must first determine the annual income of each parent. R.C. 3119.021(A)."[2] Father notes '[i]ncome' for child support purposes includes 'gross income' and 'potential income' of a parent who is unemployed or underemployed, regardless if the situation is voluntary or involuntary. R.C. 3119.01(C)(9)(b)."[3] He

---

[2] R.C. 3119.021, effective March 28, 2019, is the applicable version of this statute, and it is still in effect today.

[3] The version of R.C. 3119.01, effective September 30, 2021, cited by father was in effect at the time of the April 26, 2022 evidentiary trial in front of the magistrate, through the time when the juvenile court rendered its judgment. Thus, that is the version of R.C. 3119.01 which is applicable to this case.

23.

observes '[g]ross income' is defined by R.C. 3119.01(C)(12) as, generally, all earned and unearned income from all sources, with seven exceptions not applicable here[, and] [i]f the trial court finds a parent is voluntarily unemployed or underemployed, the trial court must consider that parent's 'potential income' by reviewing the factors mandated by R.C. 3119.01(C)(17)(a)(b). . . .

{¶ 60} Father mentions that '[p]otential income' is defined by R.C. 3119.01(C)(17)(a) and (b) as imputed income that the court determines the voluntarily-unemployed-or-underemployed parent would have earned if fully employed after considering 11 criteria, including "any other relevant factor," plus imputed income from certain non-income-producing assets. He also sets forth "R.C. 3119.01(C)(17) does not require the trial court to expressly find appellant is voluntarily unemployed or underemployed, and it is sufficiently implied where the record reflects the trial court considered the factors to determine appellant's 'potential income' for child support purposes."

**Standard of Review**

{¶ 61} Abuse of discretion is the appropriate standard of review in matters concerning child support. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). *See also Marlowe v. Marlowe*, 2023-Ohio-1417, ¶ 133 (6th Dist.).

{¶ 62} An abuse of discretion connotes that the court's attitude was arbitrary, unreasonable or unconscionable. *Id.*, citing *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996). In order for an appellate court to reach an abuse-of-discretion

24.

finding, a trial court's judgment must be so profoundly and wholly violative of facts and reasons such that it evidences the perversity of will, rather than the exercise of will, and the defiance the exercise of judgment, not the exercise of judgment, and lastly, the exercise of passion or bias, not reason. *Marlowe* at ¶ 133, citing *State v. Weaver*, 2022-Ohio-4371, ¶ 24.

**Analysis**

{¶ 63} At the outset, we note that the father's amended brief does not fully comply with App.R. 16, which provides in pertinent part:

(A) Brief of the Appellant. The appellant shall include in its brief . . . all of the following:

. . .

(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, **and parts of the record on which appellant relies**. (Emphasis added.)

{¶ 64} We further note that father's amended brief does not comply with Sixth Dist.Loc.R. 10, which states in relevant part:

. . .

(C). Citations. . . . Case citations and other **legal authorities must appear in the text of the argument after the point of law for which the case or legal authority is cited**[.] (Emphasis added.)

**{¶ 65}** It is the duty of father, not this court, to demonstrate his assigned error with arguments that are supported by citations to legal authorities and facts in the record. *Speller v. Toledo Pub. Schools Bd. of Edn.*, 2017-Ohio-7994, ¶ 56 (6th Dist.).

**{¶ 66}** In his brief, father's citations to legal authorities do not appear in the text of his arguments after the point of law for which the legal authority is cited. Rather, all of father's citations to legal authorities are set forth in two paragraphs which are separate from the four paragraphs containing his arguments.

**{¶ 67}** Father's failure to fully comply with App.R. 16(A)(7) and Sixth Dist.Loc.R. 10(C) allows us to strike his brief. *See* Sixth Dist.Loc.R. 10(F). However, we choose to address his arguments.

**Income Imputed to Father**

**{¶ 68}** Father claims CSEA acted arbitrary, capricious, and against the manifest weight of the evidence when it imputed income to him based on the faulty premise that he works as a carpenter in nonmetropolitan northeastern Ohio, which father maintains is "a field in which he is not, has not, and has never been employed."

**{¶ 69}** Upon review on this very narrow claim, in the juvenile court's September 19, 2017 judgment entry, which father mentioned in his arguments as "precedent reached by the same trial court a mere three years prior," the court fully adopted the August 28, 2017 magistrate's decision, and noted that neither parent filed objections to the magistrate's decision. In that magistrate's decision, as set forth above, the magistrate summarized the trial testimony of the witnesses, including father, and set forth, inter alia,

26.

that father "is employed at . . . [TCC] . . . [and] his **occupation is construction, carpentry**[.] [(Emphasis added.)] . . . [TCC] does remodeling, new kitchens, new bathrooms, and trim work."

{¶ 70} We next look to the August 18, 2022 magistrate's decision, where the magistrate's synopsis of Weaver's testimony included:

> [Weaver] gathered information . . . [and] . . . requested information from the parties. . . . [A]fter compiling wage information on the parties she analyze[d] it and . . . imputed income [to father] based upon 'carpenter[.]' She is aware [father] owns [TCC]. . . . [H]er calculation was based on 2019[,] [s]he decided to impute wages to [father] because when she reviewed [his]documents his employer verification information was different from the information on his taxes and his wage information was not even at a minimum wage level and he is skilled labor. . . . [Also,] [t]here were inconsistencies in [his] paperwork. . . . The figure from O*NET is based on location. [She] put in a zip code and it gave her a recommendation for Northeastern Ohio non-metropolitan areas.

27.

**Our Conclusions**

{¶ 71} We conclude, based upon the foregoing, as well as the lack of evidence to the contrary,[4] that CSEA did not act arbitrarily or capriciously when it imputed income to father, based on father working as a carpenter in nonmetropolitan northeastern Ohio.

{¶ 72} We further conclude that the juvenile court did not abuse its discretion when, in its February 17, 2023 judgment entry, it set forth and ruled as follows:

> Father argues that his testimony about his business and its income . . . that he is not a carpenter and as such should not be imputed a carpenter's wage . . . was ignored by the Magistrate. . . . However, the evidence was that Father owns a home improvement business where he does trim work and remodels kitchens and bathrooms among other services. Those projects clearly require rough and finish carpentry as well as other skills. Father's only employee is his wife and she does none of the finish work according to Father. Therefore, Father wants the Court to believe that he's not a carpenter even though the jobs that he completes require the work of a carpenter and no one else is available to do it. Father's testimony was simply not credible.

{¶ 73} Wherefore, we find no merit in father's arguments regarding the imputation of income to him.

---

[4] Father failed to cite to any evidence in the record to support his argument that he did not work as a carpenter in nonmetropolitan northeastern Ohio.

28.

**Income not Imputed to Mother (Current Finding)**

{¶ 74} Father contends that CSEA failed to take into consideration mother's medical administrative assisting degree or her pharmacy technician certification when calculating her income, CSEA acted arbitrarily when it did not to impute income to mother "even at minimum wage, despite her having numerous credentials," and CSEA and the court did not consider mother's voluntary underemployment or unemployment entirely.

{¶ 75} Upon review, in the June 9, 2021 administrative hearing decision, the hearing officer set forth, inter alia, "[mother's] income was placed at $13,400 per year based on her employment for 2019. [Her] income was not an issue for purposes of this hearing."

{¶ 76} In the August 18, 2022 magistrate's decision, the magistrate set forth the following relevant portions of summarized witness testimony:

[Mother] . . . testified [I.W.] is five years old and not in good health. He has been very sick this year, had COVID and the flu. [His] immune system is low and he uses an inhaler. . . . She . . . remembers filling out an affidavit of her expenses for [CSEA] and her expenses haven't changed. Her current rent is $730 and it's paid by Metro. Her average monthly electric bill is $130 and water bill is $35. She receives food stamps and Care Source for medical [which] doesn't cover all medical expenses. . . . [F]ood stamps provides $200 per month and she spends an additional $200 to $250 per

29.

month on groceries. . . . [S]he drives a 2009 Hyundai. Her car insurance is $70 per month; cell phone $40; and internet $40. . . . [I]n 2019 she was a pharmacy technician for Drug Mart[,] [s]he was certified by Drug Mart and worked in the pharmacy . . . from 2018 to August 2020. She was paid $10.10 per hour and had no benefits. She worked 20 to 30 hours per week. [I.W] was in daycare in a woman's home. [Mother] left Drug Mart because her daycare provider stopped taking children due to COVID and [mother] was unable to find someone to watch [I.W.] All daycares were closed . . . [S]he currently works in produce at Cornell's Foods [and] earns $13 per hour and works 15 to 20 hours per week. . . . [S]he has an Associate's Degree in medical assisting from 2015 or 2016. She has no experience in that field. She applied for work in that field when she got the degree, but couldn't get a job. She has not applied for work in that field since August 2020. . . . For both her Associates Degree in Medical Administrative Assisting and pharmacy tech you have to keep up to date in those fields and she hasn't. . . . [S]he is paid by Cornell's weekly and she takes home between $100 to $200. . . . [T]he amount of child support from [father] doesn't allow her to afford daycare. . . . [S]he has no one to help her with [I.W.] . . . [s]o [s]he works while he's . . . in Kindergarten. . . . Cornell's allows her to be flexible with her schedule, which she needs because [I.W.] is sick a lot.

. . .

[Weaver] . . . testified [CSEA] do[es] impute income for individuals when that person's income is less than minimum wage. . . . [Weaver] did not look at imputed wages for [mother] because [mother's income] was above the threshold.

{¶ 77} In the juvenile Court's February 17, 2023 judgment entry, the court set forth:

Father argues that Mother should have been imputed income like him and claims she is voluntarily underemployed. However, unlike Father, Mother is working a job that pays above minimum wage by a legitimate business, whose finances are not controlled and reported, solely, by her. Further, her current employment, Cornell's, pays more, hourly, than her prior pharmacy tech job with Drug Mart. More importantly, Mother cannot work full time because of her responsibilities toward the parties' child, [I.W.] Daycare has not been available since COVID and [I.W.] suffers some health issues which render him ill often. Mother has no choice but to deal with these issues herself because Father has no contact with his son and provides no other support to assist his child. This argument fails.

**Our Conclusions**

{¶ 78} Based on the above, we conclude that father failed to point out any evidence in the record which showed that CSEA did not consider mother's medical

31.

administrative assisting degree or her pharmacy technician certification when calculating her income.  We further conclude CSEA did not act arbitrarily when it did not impute income to mother, because CSEA imputes income when a parent's income is less than minimum wage, and mother's income was above the threshold.  Lastly, we conclude father did not direct us to evidence in the record which showed that CSEA and/or the court did not consider "mother's voluntary underemployment or unemployment."

{¶ 79} Therefore, we find no merit in father's arguments regarding the lack of imputed income to mother.

{¶ 80} Based upon the foregoing, we affirm the February 17, 2023 judgment of the Erie County Court of Common Pleas, Juvenile Division.  The costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.