[Cite as *State v. Parks*, 2024-Ohio-5538.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2024 CA 00005 |
| DANIEL PARKS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No. 2023 CR 01746


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      November 22, 2024


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

KYLE L. STONE      BERNARD HUNT
PROSECUTING ATTORNEY      2395 McGinty Road, NW
CHRISTOPHER A. PIEKARSKI      North Canton, Ohio  44720
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702

*Wise, J.*

{¶1}    Appellant, Daniel Parks, appeals from the December 12, 2023 judgment entry of the Stark County Common Pleas Court after Parks was found guilty of theft and sentenced to six months in jail and community control.  Appellee is the State of Ohio. For the reasons that follow, we affirm his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

*Indictment*

{¶2}    On July 17, 2023, a complaint was filed in the Canton Municipal Court charging appellant Daniel Parks with a theft offense for seven separate thefts from the Walmart located on Atlantic Boulevard in Stark County, Ohio.  After appellant waived his preliminary hearing, the case was bound over to the Stark County Common Pleas Court.

{¶3}    On September 8, 2023, the Stark County Grand Jury indicted appellant on one count of theft, a violation of R.C. 2913.02(A)(1)(B)(2).  Because the value of the goods stolen was more than $1,000 but less than $7,500, the theft charge was a felony of the fifth degree.

{¶4}    Parks pleaded not guilty at his arraignment and the case proceeded to a jury trial in the Stark County Common Pleas Court.

*Trial*

{¶5}    At trial, the state presented the testimony of two witnesses.

*Testimony of Anthony Angelo*

{¶6}    On July 15, 2023, Canton Police Officer Anthony Angelo was working his off-duty security job at the Walmart on Atlantic Boulevard in the City of Canton, Stark County, Ohio.  Ryan Worrell, a loss prevention associate, was watching the surveillance

cameras that were spread throughout the store and observed Parks and a female companion place some items in a plastic reusable bag and enter one of the self-checkout lanes. Worrell alerted Officer Angelo of a potential theft occurrence

{¶7} Officer Angelo proceeded to the loss prevention office and viewed the surveillance camera footage with Worrell. He observed Parks and his female companion placing items in the reusable plastic bag. He saw them enter the self-checkout line, proceed to scan some items, and then leave the store with items that appeared to be not scanned and not paid for.

{¶8} Officer Angelo and Worrell stopped the couple in the vestibule of the store after they had left the final "point of purchase". Parks and his companion were escorted to the loss prevention office with the goods still in the bag.

{¶9} The items in the bag were sorted and the ones that had no receipt were collected and returned to the shelves. Parks and his companion were allowed to leave the store with the items that the receipt showed had been paid for, and Parks was issued a summons for misdemeanor theft.

{¶10} Later, Officer Angelo and associates from Walmart's loss prevention department compared the credit or debit card Parks used for the transaction with prior transactions using a software program called Secure Store. Reviewing those prior transactions and the surveillance videos, they were able to determine that Parks had committed six prior thefts. In all, between June 12, 2023 and July 15, 2023, Parks stole goods valued at over $1,600.

{¶11} Officer Angelo contacted the Canton City Prosecutor's Office and was advised that the multiple thefts totaling over $1,000 constituted a "continuing course of conduct".

{¶12} Accordingly, a complaint was filed in the Canton Municipal Court charging Parks with a felony five theft, goods stolen over $1,000 but less than $7,500.

*Testimony of Travis Davis*

{¶13} Travis Davis, an employee of Walmart in the loss prevention department, has been working in the department since July, 2023. He was not the original employee associated with the report of the Parks' thefts. Ryan Worrell was no longer employed by Walmart. The state supplemented its witness list to include the name of Davis.

{¶14} Davis explained the video surveillance system, which included over 32 cameras with optical zoom and 50 stationery cameras throughout the store. He described the theft packet report that is generated by Walmart's "loss prevention" or "asset protection" department when there is a suspicion of a theft or shoplifting reported in the store. A theft packet report was generated in appellant's case and any other reports of theft made by the department. Tr. 120.

{¶15} First, Davis explained there is an alert signal such as a previous theft that was confirmed or a person walking through the store with a large backpack. Second, the surveillance cameras are viewed to watch the shopper and observe whether the shopper has picked up some goods from the store and not something brought in. For example, a shopper may be carrying a beverage that was brought into the store from an outside source. Then, it is observed whether the shopper tries to conceal a product.

And finally, the video cameras are viewed to determine whether the shopper takes the suspected stolen goods past the "last point of sale".

{¶16} Davis reviewed the theft packet report generated for Parks and viewed the surveillance videos accompanying the report. He described the two methods Parks used to steal products on Walmart shelves.

{¶17} Parks would use the "Scan and Go App" implemented by Walmart. A shopper downloads the App on the cell phone and then scans merchandise throughout the store and pays for it at the register. This eliminates the need to scan each individual item at the register.

{¶18} Parks used his "Scan and Go" App to scan an item less than the actual item. For example, Parks scanned one 20 ounce can of Mountain Dew and placed a 24 pack in his shopping cart; "it looks right on the receipt but the price amount doesn't match up." Tr. 122.

{¶19} Parks also used the "point of sale" system at the self-checkout register in front of the store. In these cases, he would not scan all of the items in his shopping cart and place the unscanned items in a bag along with the scanned items and leave the store.

{¶20} In all, Walmart traced seven times from June, 2023 to July 15, 2023 when Parks stole a total of $1,636.15 in goods. Parks' thefts ranged from a 24 pack of Mountain Dew to a Coleman 16-foot pool set.

{¶21} The state introduced, without objection, the Walmart theft report. State's Exh. 3. The jury also viewed the surveillance videotapes footage that were part of the

theft report without objection.  Parks did not file a motion in limine to exclude Travis Davis as a witness.

{¶22}  The defense presented no evidence, and Parks did not testify in his defense.

{¶23}  After hearing the evidence, viewing the exhibits and receiving instructions from the trial court, the jury returned with a verdict of guilty in approximately twenty-two minutes.  Tr. 231.  The jury further found that the value of the goods stolen was more than $1,000 but less than $7,500.

*Sentence*

{¶24}  Parks was sentenced to six months in the Stark County Jail and three years of community control.  The trial court further ordered restitution to Walmart in the amount of $873.46, the value of goods never recovered.

{¶25}  Appellant now brings this timely appeal arguing four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶26}  "I.     APPELLANT WAS DEPRIVED OF HIS RIGHT TO CONFRONT THE WITNESSES AGAINST HIM BY THE ADMISSION AT TRIAL OF TESTIMONIAL STATEMENTS OF AN ABSENT WITNESS.

{¶27}  II.     ADMISSION OF TRAVIS DAVIS'S STATEMENTS REGARDING FACTS OF WHICH HE HAD NO PERSONAL KNOWLEDGE VIOLATED THE RULES OF EVIDENCE.

{¶28}  "III.     APPELLANT'S CONVICTION WAS NOT BASED ON LEGALLY SUFFICIENT EVIDENCE.

{¶29} "IV.　　APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I., II.**

{¶30}　In assignments of error one and two, appellant challenges the testimony of Travis Davis, the asset protection and loss prevention employee from Walmart who testified to the theft report generated by Walmart in this case.　Appellant claims that he was deprived of his right to confront the actual employee who led the theft investigation, Ryan Worrell.　Worrell was no longer employed by Walmart, and his subpoena was returned as no longer employed. His second assignment of error also challenges the testimony of Travis Davis claiming that the trial court erred in allowing him to testify to matters in which he had no personal knowledge.

{¶31}　Because these assignments of error are interrelated, they will be discussed together.

*Plain Error Review*

{¶32}　Parks did not object to the testimony of Davis, the admission of the video surveillance footage or the "theft report".　Thus, our appellate review is limited to plain error.

{¶33}　Pursuant to Crim.R. 52(B), a plain error may be invoked in exceptional circumstances to avoid a miscarriage of justice.　*State v. Long,* 53 Ohio St.2d 91, 94 (1978).　In order for Crim.R. 52(B) to apply, a reviewing court must find that (1) there was an error, i.e., a deviation from a legal rule, (2) that the error was plain, that is an obvious defect in the trial proceedings and (3) that the error affected substantial rights – the outcome of the trial.　*State v. Stephens,* 2022-Ohio-2944, ¶ 45 (5th Dist.).

{¶34}  The decision to admit or exclude evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion.  However, challenged hearsay is subject to de novo review rather than the more deferential review of abuse of discretion.  *State v Kanable,* 2020-Ohio-4335, ¶ 19 (6th Dist.); *N.T. v. J.W.,* 2024-Ohio-1513, ¶ 29 (6th Dist.); John Soliday Fin. Group L.L.C. v. Pittenger, 2010-Ohio-4861, ¶ 28 (5th Dist.) ("... [W]e review de novo the trial court's decision regarding whether evidence is hearsay or nonhearsay under Evid.R. 801.") citations omitted.

{¶35}  We reject appellant's assignments of error numbers one and two and find that the testimony of Travis Davis in support of the "theft report" and video surveillance footage was permissible evidence under the business records exception to the hearsay rule.

*Business records exception to Hearsay Rule*

{¶36}  Evid.R. 801(C) sets forth that hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."

{¶37}  Evid.R. 802 states that "[h]earsay is not admissible except as otherwise provided by ... these rules, or by other rules prescribed by the Supreme Court of Ohio."

{¶38}  Evid.R. 803 set forth exceptions to the hearsay rule.  Evid.R. 803(6) sets forth the business records exception to the hearsay rule and states, in part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) Records of a regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made

at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness ... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶39}  To be admissible as a business record, Ohio Evid. 803(6) requires a record to meet the following four elements:

(1) it must have been made in the course of a regularly conducted business activity; (2) it must have been entered by a person with knowledge of the act, event or condition, (3) it must have been recorded at or near the time of the transactions, and (4) a foundation must be laid by the custodian of the record or by some other qualified witness.  *State v. Kanable,* 2020-Ohio-4335, ¶ 20 (6th Dist.), citing *State v. Davis,* 2008-Ohio-2, ¶ 171, accord *John Soliday Fin.Group L.L.C. v. Pittenger,* 2010-Ohio-4861, at ¶ 31 (5th Dist.).

{¶40}  The phrase "other qualified witness" should be broadly interpreted.  It is not necessary that the witness have firsthand knowledge of the transaction giving rise to the record.  "Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation,

maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6)." *John Soliday Fin. Group L.L.C. v. Pittenger,* 2010-Ohio-4861 at ¶ 32 (5th Dist.) quoting *State v. Patton* (Mar. 5, 1992, Allen App. No. 1-91-12, 1992 WL 42806 citing *1 Weissengerger's Ohio Evidence* (1985) 75-76, Section 803.7.

{¶41} The business records exception is modeled after Fed.R. 803(6). In *United States v. Jenkins,* 345 F.3d 928, 935 (6th Cir. 2003), the Sixth Circuit discussed the meaning of "otherwise qualified witness":

Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record. The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. Likewise, '[t]o be an 'other qualified witness,' it is not necessary that the person laying the foundation for the introduction of the business record have personal knowledge of their preparation.

{¶42} *Id.* at 935, internal citations omitted.

{¶43} In this case, the trial court did not commit plain error in accepting Davis' testimony as an "otherwise qualified witness' under Evid.R. 803(6). Davis testified that he was familiar with the theft reports generated by Walmart and described in detail the procedure utilized by Walmart when a theft is suspected.

{¶44}  The theft report and surveillance videotapes footage presented by Davis satisfy the criteria for the business records exception to the hearsay rule.  The evidence was indisputably from Walmart, created immediately after the thefts, generated by an employee familiar with the procedure in place for detecting thefts and testified to by an asset protection employee responsible and familiar with the process.

{¶45}  Parks submitted no evidence that the theft report and surveillance video footage or its methods of preparation were not trustworthy.  Accordingly, we find that the theft report and surveillance video footage fall under the Evid.R.803(6) business records exception and the trial court did not commit plain error when it admitted the evidence.

*Confrontation Clause*

{¶46}  Parks contends that the trial court violated his constitutional right to confront the witnesses against him by allowing the state to provide evidence of the thefts through the testimony of Travis Davis.  We conclude that the trial court did not violate the Confrontation Clause by admitting Davis' testimony.

{¶47}  The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against him."

{¶48}  The Supreme Court has construed the Sixth Amendment's Confrontation Clause to bar the admission of testimonial hearsay against a criminal defendant unless the declarant is unavailable to testify at trial and the defendant has had a prior opportunity to cross-examine the declarant.  *Crawford v. Washington,* 541 U.S. 36, 68 (2004).

{¶49}  A hearsay statement is testimonial if it was made "under circumstances which would lead an objective witness reasonably to believe that the statement would

be available for use at a later time. *Melendiaz-Diaz,* 557 U.S. at 310 quoting *Crawford,* 541 U.S. at 51-52.

{¶*50*}  We review de novo whether the trial court violated Parks' confrontation rights by admitting the testimony of Davis into evidence.  Again, because Parks did not raise a Confrontation Clause objection at trial, we apply the plain error standard of review outlined above.  Under this standard, we will reverse only if the trial court committed an obvious and substantial error that so undermined the fundamental fairness of the trial itself so as to cause serious doubt on the reliability of the judgment of conviction. *State v. Long,* 53 Ohio St.2d 95.

### Davis' Statement

{¶51}  Davis testified that he was employed in the loss prevention department at Walmart and was trained in the methods used to detect thefts and shoplifting.  He described in detail the steps taken to identify the thefts committed by Parks.

{¶52}  As noted, the surveillance video footage and theft report can be authenticated by someone other than its creator as long as the witness has knowledge that the exhibits accurately represent what the proponent claims it represents.  Davis described the procedure employed by Walmart in apprehending potential shoplifters.  Davis presented the surveillance video footage so that the factfinder – the jury – could see for themselves Parks committing the acts of theft by improperly scanning the items or not scanning the items at all.

{¶53}  Accordingly, we cannot say that any error in admitting the theft report and surveillance videotapes through the testimony of Davis was plain error.

{¶54} Officer Angelo testified that he reviewed the surveillance tapes showing the thefts conducted by Parks. He was involved in the apprehension of Parks that day and issuing him a summons for theft. Thus, the testimony of Davis was cumulative of other evidence admitted at trial. Davis testimony went to the weight of the evidence and not its admissibility.

{¶55} Parks cites to the United States Supreme Court holding in *Bullcoming v. New Mexico,* 564 U.S. 647 (2011) for the proposition that it is a violation of the Confrontation Clause to introduce a report that is not authored by the person testifying. As the state notes, this case is easily distinguished. In *State v. Hood,* 2012-Ohio-6208, the Ohio Supreme Court, when discussing the admission of cell-phone records as business records, stated:

> Unlike the laboratory reports that the [United States Supreme Court] found to be testimonial in *Melendez-Diaz …* or *Bullcoming*, … the culling and configuration of cell-phone records does not require the undertaking of a scientific process or an interpretation of results from experimentation. It reflects only a formatting of information that already exists as a part of the company's day-to-day business.

{¶56} *Id.* at ¶ 38.

{¶57} Parks submitted no evidence that the theft report and surveillance video footage or its methods of preparation were not trustworthy. Accordingly, we find that the theft report and surveillance video footage fall under the Evid.R.803(6) business records exception, and their admission through the testimony of Davis did not violate the Confrontation Clause.

**{¶58}** Appellant's assignments of error numbers one and two are overruled.

### III, IV.

{¶59} In Parks' third and fourth assignments of error, he argues that the state failed to present sufficient evidence to prove every element of the crime of theft beyond a reasonable doubt. He also alleges that the jury lost its way in convicting him of theft – a manifest weight of the evidence argument. Because both assignments require us to examine the evidence we will review them together.

*Standards*

{¶60} The standards for challenges to the sufficiency of the evidence and for challenges to the manifest weight of the evidence are quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St. 3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Thus, while a court of appeals may determine that a conviction is supported by sufficient evidence, that court may nevertheless conclude that the jury's verdict is against the weight of the evidence.

{¶61} Sufficiency challenges are a test of adequacy. As the supreme court has held:

> The sufficiency of the evidence is a test of adequacy. *Thompkins* at 86, 678 N.E.2d 541. When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. (citations omitted). Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. This naturally entails a review of the elements of the charged offense and a review of the state's evidence.

{¶62} The Ohio Supreme Court borrowed in *Jenks* this sufficiency standard from the federal standard. Thus, pursuant to this standard, the reviewing court's task is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."

{¶63} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, (1991), paragraph two of the syllabus.

{¶64} Evidentiary claims that challenge the manifest weight of the evidence are reviewed under a different standard than sufficiency claims. Under the manifest weight standard of review, the reviewing court assesses all of the evidence admitted at trial to determine whether it agrees with the factfinder's resolution of conflicting evidence, sitting as a kind of "thirteenth juror," *Thompkins, supra*, at 386. The reviewing court must decide whether the jury lost its way in assessing and weighing the credibility of witnesses and admitted evidence and thereby created a manifest miscarriage of justice.

*Law*

{¶65} R.C. 2913.02 provides the definition of theft and states in relevant part:

(A) No person, with purpose to deprive the owner of property---shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

...

(B)(1) Whoever violates this section is guilty of theft.

(2) ... If the value of the property---stolen is one thousand dollars or more and Is less than seven thousand five hundred dollars ---a violation of this section Is theft, a felony of the fifth degree.

*Parks committed theft*

{¶66} We find that appellant's conviction for theft is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented two witnesses who testified regarding the thefts which occurred at the Walmart on Atlantic Blvd. in Stark County, Ohio from June to July, 2023.

{¶67} The state presented evidence which demonstrated the amount and value of the items stolen that amounted to over $1,000. Officer Angelo explained that originally, Davis was charged with a misdemeanor because the amount of good stolen by Parks on July 15, 2023 was less than $1,000. But upon further review of the surveillance tapes and the payment methods Parks used, it was determined that he stole goods from Walmart on at least seven occasions totaling over $1,000. Officer Angelo testified that he consulted with the City prosecutor's office and determined that the multiple thefts constituted a continuing course of conduct which reached the felony five status.

{¶68} Davis testified to the "theft packet" that was generated by Walmart's loss prevention department that established the stolen merchandise value exceeded $1,600.

{¶69} Finally, the surveillance video footage was viewed by the jury and showed Parks selecting products, not scanning certain items and scanning cheaper versions of more expensive item. The evidence demonstrated the pattern of Parks' thefts. He

started out stealing small items and when he wasn't caught, he gradually progressed to more expensive items.

{¶70} We find that the state presented sufficient evidence for a rational trier of fact to find all of the essential elements of the crime of theft beyond a reasonable doubt. We further find that the jury did not lose its way in convicting Parks of theft.

{¶71} Appellant third and fourth assignments of error are overruled.

## CONCLUSION

{¶72} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.

JWW/kt 1114