[Cite as *State v. Fogle*, 2026-Ohio-722.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 25CA00042 |
| Plaintiff - Appellee | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Licking County, Case No. 2024CR000619 |
| TRACY LEE FOGLE, | |
| Defendant - Appellant | Judgment:  Affirmed |
| | Date of Judgment:  March 3, 2026 |

BEFORE: William B. Hoffman; Andrew J. King; David M. Gormley, Judges

APPEARANCES: Jenny R. Wells (Licking County Prosecuting Attorney) & Kenneth W. Oswalt (Assistant Prosecuting Attorney), Newark, Ohio, for Plaintiff-Appellee; Brian A. Smith, Fairlawn, Ohio, for Defendant-Appellant.

*Gormley, J.*

{¶1}   Appellant Tracy Fogle challenges her convictions on charges of felonious assault, improperly handling a firearm in a motor vehicle, and aggravated menacing. According to Fogle, the State's evidence at trial was insufficient to support her conviction for felonious assault, and she argues, too, that her convictions on all three charges were against the manifest weight of the evidence.  Fogle also contends that the trial court improperly limited her counsel's cross-examination of a witness and argues that her trial counsel was ineffective because that attorney did not file a motion to suppress.  After considering each of Fogle's arguments in turn, we see no reason to overturn her convictions.  The trial court's judgment is affirmed.

**The Key Facts**

{¶2}    On the evening of August 23, 2024, R.S. and K.G. arrived at the Mary Ann Township fire station in Licking County and reported that Fogle had shot at them and that Fogle had been struck by their vehicle.  Minutes later, Fogle herself called 9-1-1 from the parking lot of a business located across the street from the fire station and reported that she had been struck by a vehicle and was injured.

{¶3}    Earlier in the evening, R.S. and K.G. — who were dating at the time of the incident — were at K.G.'s home when Fogle (who is K.G.'s sister) arrived.  According to testimony from Fogle's trial, K.G. then stepped out of her home and spoke with Fogle while Fogle remained in her vehicle.  During that conversation, K.G. noticed a handgun under Fogle's leg.  K.G. asked Fogle why she had a handgun, and Fogle responded that she thought perhaps she was coming there to shoot K.G.  K.G. testified that Fogle had an open can of beer in her vehicle and smelled of alcohol.  Fogle refused to leave when K.G. asked her to, so R.S. and K.G. left and drove around for a while.

{¶4}    When R.S. and K.G. returned to the residence, they discovered that Fogle — who was still sitting in her vehicle — had been drinking beer and throwing the empty cans onto the road.  K.G. and Fogle both stepped out of their vehicles to speak to each other, and K.G. noticed that Fogle had a handgun tucked into her waistband.  Fogle and K.G. scuffled briefly, and, as K.G. walked away, Fogle pointed the handgun at K.G. and pulled the trigger several times.  K.G. testified that she heard a clicking noise as Fogle pulled the trigger.

{¶5}    R.S. revved the engine of his vehicle, and Fogle then pointed the handgun at him and again pulled the trigger.  Next, R.S. struck Fogle with the front of his vehicle.

Fogle — who was still on foot outside her vehicle — then walked toward K.G. again, and K.G. took the gun from her and tossed it aside. K.G. then climbed into R.S.'s vehicle, and R.S. drove them to the fire station.

{¶6} When law-enforcement officers approached Fogle at the business across the street from the fire station, she had injuries to her head and legs, smelled of alcohol, and appeared highly intoxicated. Fogle admitted to drinking alcohol, and a search of her vehicle revealed a can of beer, a loaded magazine for a handgun, additional ammunition, and a holster. When they went to the scene where the encounter outside K.G.'s home had occurred, law-enforcement officers saw Fogle's shoe and glasses, a broken-off piece of R.S.'s vehicle, an empty beer can, a handgun with an empty magazine, and skid and yaw marks in the roadway. The following day, the sheriff's office received a call from a neighbor who lived on the same street as K.S., and that neighbor reported having found a handgun in her mailbox. A deputy retrieved the handgun, which belonged to Fogle.

{¶7} Fogle was indicted on multiple criminal charges. After a jury trial, Fogle was found guilty of felonious assault (a second-degree felony) with a firearm specification, improperly handling a firearm in a motor vehicle (a fifth-degree felony), and aggravated menacing (a first-degree misdemeanor). Fogle now appeals her convictions.

**Fogle's Conviction for Felonious Assault is Supported by Sufficient Evidence**

{¶8} In her first assignment of error, Fogle argues that the State failed to present sufficient evidence to support her conviction on the felonious-assault charge.

{¶9} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶10} To prove the R.C. 2903.11(A)(2) charge of felonious assault, the State was required to introduce evidence that Fogle knowingly "[c]ause[d] or attempt[ed] to cause physical harm to another . . . by means of a deadly weapon." A firearm is considered a deadly weapon, whether it is loaded or unloaded. *State v. Meek*, 53 Ohio St.2d 35, 39 (1978). *See also* R.C. 2923.11(B)(1) ("'Firearm' includes an unloaded firearm").

{¶11} Fogle argues that the State's evidence was insufficient to show that she *knowingly* caused or attempted to cause physical harm to either K.G. or R.S. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶12} "[T]he word 'knowingly' in the statute . . . applies to the activity of . . . point[ing] the weapon and fir[ing] the shots." *State v. Phillips*, 77 Ohio App.3d 663, 665 (2d Dist. 1991). Felonious assault entails at least an "attempt to cause harm by means of a deadly weapon" even when "no harm results." *Id.* at 666.

**{¶13}** To be sure, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Brooks*, 44 Ohio St.3d 185, 192 (1989). When that "act of pointing a deadly weapon at another" is, however, "coupled with a threat, which indicates an intention to use such weapon, [there] is sufficient evidence to convict a defendant of the offense of 'felonious assault.'" *State v. Green*, 58 Ohio St.3d 239, 241 (1991).

**{¶14}** In this case, Fogle admitted to having a firearm with her when she went to K.G.'s residence. (The jury heard about that admission through the testimony of a detective who had interviewed Fogle after the incident.) K.G. testified that when she asked Fogle during their encounter why she had a firearm, Fogle responded that she did not know if she was going to shoot K.G. or not.

**{¶15}** Both K.G. and R.S. also testified that during their second encounter with Fogle (after those two had driven around for some time and then had returned to K.G.'s home), Fogle pointed the firearm first at K.G. and then at R.S., and both of those alleged victims told the jury that Fogle had repeatedly pulled the trigger when the gun was pointed at each of them. K.G. and R.S. testified, too, about having heard a clicking sound when Fogle pulled the trigger.

**{¶16}** Moreover, Fogle admitted to a deputy that she had in fact pointed the firearm at R.S. and had pulled the trigger, but — according to the deputy's trial testimony — Fogle told him that she was unsure whether any rounds had been discharged. The jury heard, too, that tests performed by the Ohio Bureau of Criminal Investigation confirmed that the handgun at issue was indeed operable.

**{¶17}** In light of this evidence, we cannot say that a reasonable jury could not have concluded that Fogle's actions were "strongly corroborative" of her intent to cause physical harm to K.G. or R.S. (or both) by means of a deadly weapon. *Brooks*, 44 Ohio St.3d at 192 (evidence supporting felonious-assault conviction was sufficient where the victim and the defendant were embroiled in a volatile argument and the defendant drew a revolver and told the victim that he would kill her). *See also State v. Rose*, 2008-Ohio-1262, ¶ 30 (8th Dist.) ("[e]ven though the gun misfired, the evidence showed that by pulling the trigger, [defendant] attempted to cause physical harm"); *State v. Nichols*, 2010-Ohio-5737, ¶ 55 (9th Dist.) (the trier of fact could reasonably infer that "but for the misfire, hangfire, or absence of a bullet in the chamber," pointing a handgun at the victim and firing showed purposeful action on the part of the defendant to cause physical harm).

**{¶18}** Here, as in *Brooks*, "there would be little doubt that a reasonable jury could convict the defendant of felonious assault" when Fogle pointed a handgun at K.G. and R.S. "and either fired or attempted to discharge [her] weapon in [their] direction." *Brooks* at 192. The testimony of K.G. and R.S. supports this conclusion, and Fogle herself admitted to brandishing a firearm and pulling the trigger.

**{¶19}** We conclude that the evidence presented at Fogle's trial, when viewed in a light most favorable to the State, is sufficient to permit a rational trier of fact to find beyond a reasonable doubt all of the essential elements to support Fogle's conviction for felonious assault.

## Fogle's Convictions Are Not Against the Manifest Weight of the Evidence

**{¶20}** In her second assignment of error, Fogle contends that her convictions were against the manifest weight of the evidence.

**{¶21}** In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts "as a 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

**{¶22}** "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" *Thompkins* at 387 (emphasis in original). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

<u>Felonious Assault</u>

**{¶23}** Fogle argues that her conviction for felonious assault is against the manifest weight of the evidence because the State did not show, beyond a reasonable doubt, that Fogle *knowingly* caused or attempted to cause physical harm to K.G. or R.S.

**{¶24}** As we addressed above, the State presented sufficient evidence to show that Fogle pointed the handgun at K.G. and R.S. and pulled the trigger. And though the

parties agree that no projectiles were fired from the handgun that day — and in fact the gun was apparently unloaded — the Supreme Court of Ohio has held that "an unloaded gun used in an assault is . . . a 'deadly weapon.'" *State v. Tate*, 54 Ohio St.2d 444, 446 (1978).

{¶25} In her statement to law-enforcement officers, Fogle did not say that she was aware that the gun was unloaded. On the contrary, she told a detective who interviewed her that she kept her handguns loaded.

{¶26} We readily conclude that Fogle's actions of pointing the handgun at K.G. and R.S. and repeatedly pulling the trigger support her conviction on the charge of felonious assault.

{¶27} Fogle also argues that the testimony of both K.G. and R.S. was inconsistent and not credible. Fogle told law-enforcement officers that she was struck by R.S.'s vehicle twice, but K.G. and R.S. maintained that Fogle was struck only once.

{¶28} The credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "A reviewing court gives deference to the jury's determination of witness credibility because the jury 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Payne*, 2025-Ohio-5109, ¶ 21 (5th Dist.), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1980).

{¶29} "'When deciding whether to believe a particular witness's testimony, a jury may 'consider the reasonableness of the testimony and all the facts and circumstances surrounding the testimony.'" *Payne* at ¶ 22, quoting *State v. Greenwood*, 2021-Ohio-921,

¶ 41 (10th Dist.).  We cannot say that the jury in this case lost its way simply because jurors chose to believe the State's version of events.

*Improperly Handling a Firearm in a Motor Vehicle*

**{¶30}** Fogle argues that her conviction for improperly handling a firearm in a motor vehicle was against the manifest weight of the evidence because — she claims — the State did not prove that she was under the influence at the time of the incident.

**{¶31}** Fogle was convicted under R.C. 2923.16(D), which provides that "[n]o person shall knowingly transport or have a loaded handgun in a motor vehicle if, at the time of that transportation or possession . . . [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them . . . [or] [t]he person's . . . urine contains a concentration of alcohol, a listed controlled substance, or a listed metabolite of a controlled substance prohibited for persons operating a vehicle, as specified in [R.C.] 4511.19."  The State presented testimony indicating that Fogle was intoxicated and also presented a lab report from a test of Fogle's urine showing that her levels of alcohol and marijuana metabolite were above the levels set by R.C. 4511.19(A)(1)(e) (alcohol) and R.C. 4511.19(A)(1)(j)(viii)(II) (marijuana metabolite).

**{¶32}** "'It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated.'"  *State v. Palmer*, 2022-Ohio-1968, ¶ 33 (5th Dist.), quoting *State v. Scott*, 2021-Ohio-156, ¶ 30 (5th Dist.).  The State provided testimony from several witnesses who, during or soon after the incident, encountered Fogle while she was in what they described as an intoxicated state.

**{¶33}** K.G. testified that when Fogle first arrived at her residence, K.G. believed that Fogle had been drinking and that she smelled of beer.  When K.G. and R.S. returned

to the residence sometime later, they observed beer cans in the street that had evidently been tossed there by Fogle.

{¶34} Deputy Brown first encountered Fogle in the parking lot of a business across the street from the fire station. Fogle had driven herself there after being struck by R.S.'s vehicle. Deputy Brown testified that there was a faint smell of alcohol coming from Fogle and there was an unopened beer can in the center console of her vehicle. When Deputy Brown saw Fogle soon thereafter at a hospital, he testified that the odor of alcohol was stronger because they were in an enclosed area. Fogle admitted to Deputy Brown then that she had downed three beers, but she stated that she could not remember the time when she had consumed the last of those. Deputy Brown could see that Fogle's eyes were red and "glossy," which he testified can be an indicator that a person is under the influence. Deputy Brown also observed resting nystagmus, which is indicative, too, he said, of being under the influence.

{¶35} Detective Rockey interviewed Fogle at the hospital, and he testified that he detected a strong or moderate odor of alcohol coming from her. Based on his interactions with her, Detective Rockey stated that Fogle was showing indicators of intoxication, including her sluggishness and her slow, raspy, and slurred speech.

{¶36} The State also presented the lab results from the chemical testing of Fogle's urine sample. A criminalist from the Ohio State Highway Patrol's crime laboratory — Edward Yingling — testified that he analyzed the urine sample for the presence of alcohol or ethanol. According to Yingling's testimony, the results of his testing showed 0.209 gram by weight of alcohol per 100 milliliters of urine, which is higher than the limit set by R.C. 4511.19(A)(1)(e). Another criminalist — Kimberly Belvin — from the same lab

testified that she performed a drug toxicology test on Fogle's urine sample. Ms. Belvin explained to the jury that the results of the testing showed a concentration of 84.55 nanograms of marijuana metabolite per milliliter of urine (plus or minus 7.60 nanograms per milliliter), which again is higher than the limit set by R.C. 4511.19(A)(1)(j)(viii)(II).

{¶37} After reviewing the record, we conclude that the State presented ample evidence that Fogle was under the influence of alcohol or drugs (or had a prohibited level of alcohol or drugs in her urine) at the same time she transported or possessed a firearm in a vehicle. In light of the evidence presented at the trial, we cannot say that the jury lost its way and created a manifest miscarriage of justice when the jury found Fogle guilty on the improper-handling charge.

*Aggravated Menacing*

{¶38} Fogle argues next that her conviction for aggravated menacing was against the manifest weight of the evidence. She was convicted under R.C. 2903.21(A), which provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person."

{¶39} Fogle contends that because K.G. and R.S. testified at trial that Fogle pulled the trigger on the firearm several times and that the gun never discharged a projectile, the weight of the evidence failed to prove that Fogle "knowingly" caused K.G. and R.S. to believe that she would cause them physical harm.

{¶40} We readily conclude that Fogle's argument misses the mark. The act of pointing a deadly weapon at another "would undoubtedly justify a jury in concluding that the accused had committed the offense of 'aggravated menacing' as defined by R.C. 2903.21." *Brooks*, 44 Ohio St.3d at 192. The testimony of K.G. and R.S., as well as

Fogle's own statements to law-enforcements officers, support the jury's determination that Fogle committed the offense of aggravated menacing.

{¶41} After reviewing the full record, we cannot say that the evidence weighs heavily against a conviction on any of the three charges, and nothing in the record suggests that the trier of fact lost its way or that a manifest miscarriage of justice has occurred.

## The Trial Judge Did Not Abuse His Discretion When the Judge Barred Fogle from Cross-Examining a Witness About Refrigeration Requirements for Chemical Tests

{¶42} In her third assignment of error, Fogle argues that the trial court abused its discretion by not allowing her counsel to cross-examine a witness about the refrigeration of her urine sample.

{¶43} Fogle's counsel attempted to question criminalist Edward Yingling about the Ohio Administrative Code's refrigeration requirement for urine and blood samples. The State objected to that line of questioning, and the trial court agreed that a motion to suppress would have been the proper vehicle for any challenge to the testing procedures.

{¶44} "The decision to admit or exclude evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *State v. Parks*, 2024-Ohio-5538, ¶ 34 (5th Dist.). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶45} A defendant must "challenge the admissibility of the chemical test results through a pretrial motion to suppress" or he "waives the requirement on the state to lay a foundation for the admissibility of the test results at trial." *State v. French*, 72 Ohio St.3d

446, 451 (1995). If the defendant does not object to the admissibility of a chemical test in a pretrial motion to suppress focused on the State's compliance with the Ohio Department of Health's regulations, that defendant "may not object to the admissibility of the test results at trial on those grounds." *Id*. at 449. *See also State v. Edwards*, 2005-Ohio-6180, ¶ 20, quoting R.C. 4511.19(D)(1) ("the issue whether '[t]he bodily substance withdrawn [was] analyzed in accordance with methods approved by the director of health' . . . is not a jury question and is to be decided by the court prior to trial").

**{¶46}** The Supreme Court of Ohio has clarified that a failure to file a pretrial motion challenging the admissibility of chemical test results "does not mean . . . that the defendant may not challenge the chemical test results at trial under the Rules of Evidence." *French* at 452. The Court in that case held that "[e]videntiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised." *Id*. Thus, Fogle could have "challenge[d] the results on grounds other than that the results were not obtained in compliance with the established guidelines." *State v. Syx*, 2010-Ohio-5880, ¶ 30 (2d Dist.), citing *State v. Edwards*, 2005-Ohio-6180, ¶ 19.

**{¶47}** Fogle acknowledges that her counsel did not challenge the validity of the chemical test results through a pretrial motion to suppress, but Fogle maintains that she was denied the opportunity to cross-examine the State's witness regarding the chain of custody and the authentication of the urine sample and the lab report.

**{¶48}** Fogle's argument here seems to confuse "objections based on regulatory compliance under [the Ohio Administrative Code] with objections based on admissibility

under the Rules of Evidence, specifically Evid.R. 901 (authenticity/chain of custody)." *State v. Woltz*, 2017-Ohio-9042, ¶ 14 (4th Dist.).

**{¶49}** Fogle retained the right to challenge the chain of custody at trial. "Generally, chain of custody issues go to the weight, rather than the admissibility[,] of evidence." *State v. Childers*, 2011-Ohio-6742, ¶ 38 (5th Dist.). "'Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901, and the state has the burden of establishing the chain of custody of a specific piece of evidence.'" *State v. Corder*, 2012-Ohio-1995, ¶ 15 (4th Dist.), quoting *State v. Brown*, 107 Ohio App.3d 194, 200 (3d Dist. 1995).

**{¶50}** "A strict chain of custody is not always required in order for physical evidence to be admissible." *State v. Wilkins*, 64 Ohio St.2d 382, 389 (1980). A break in the chain of custody goes to the weight afforded to the evidence, not to its admissibility. *State v. Lenoir*, 2010-Ohio-4910, ¶ 18 (5th Dist.), citing *State v. Blevins*, 36 Ohio App.3d 147, 150 (10th Dist. 1987). And "even if the chain of custody is broken, that fact alone will not render the evidence inadmissible." *Lenoir* at ¶ 19.

**{¶51}** The State called Edward Yingling as a witness to testify about the results of the chemical test performed on Fogle's urine sample, and Yingling testified about the amount of alcohol present in Fogle's urine sample. On cross-examination, Fogle's counsel asked Yingling if August 24, 2024 — the date listed on the lab report — was the date when the urine sample arrived at the Ohio State Highway Patrol's laboratory. Yingling said that it was.

**{¶52}** Fogle's counsel then began the next question this way: "Now, the Ohio Administrative Code mentions that urine samples and blood samples should be

refrigerated when - -." The State interrupted that question and objected, indicating that the time to challenge the refrigeration of the sample was at a suppression hearing. The trial judge agreed and advised Fogle's counsel that a motion to suppress was the way to attack the test results. Fogle's counsel responded: "Even to sufficiency, not the actual - -." The trial judge responded: "Yeah. Those go to how you do the test. Got to be done, so - -." Fogle's counsel then responded, "All right."

**{¶53}** The trial court did not prevent Fogle's counsel from cross-examining. Yingling. By agreeing with the State, the trial court merely followed clear Ohio law indicating that a motion to suppress is the proper vehicle for any chemical-test admissibility challenges that are grounded on an alleged failure by the government to comply with Department of Health regulations. Counsel's question to Yingling about when the sample was received in the laboratory was permissible, and the jury heard Yingling's response. But instead of inquiring about the chain of custody for the sample, Fogle's counsel then inquired about the Ohio Administrative Code's refrigeration requirements for urine and blood samples. When the State objected, the trial judge stated that any questions that "go to how you do the test" must be raised, if at all, in a motion to suppress. The judge then told Fogle's counsel to "please proceed," and counsel responded that she had "no further questions."

**{¶54}** The exchange between the trial judge and counsel does not support Fogle's contention that her counsel was prevented from cross-examining Yingling. In asking about the refrigeration requirements for urine and blood samples, Fogle's counsel was not challenging the chain of custody of the urine sample or the authentication of the lab report. And after the trial judge advised Fogle's counsel that she could not pursue a line

of questioning about how the sample was analyzed, counsel chose not to ask any additional questions of the witness. The record shows that counsel chose not to question the witness about chain of custody or authentication, even though the trial judge did not prevent counsel from doing so.

{¶55} We see no error with the trial court's ruling limiting Fogle's counsel's cross-examination of Yingling. Moreover, even had additional questioning by defense counsel cast doubt on the weight that the jury should have given to the test results, ample other evidence presented at the trial supported the State's view that Fogle was under the influence. Multiple witnesses testified about Fogle's acknowledged consumption of beer during the incident, about the evident odor of alcohol emanating from her, and about other indicators of impairment that they observed.

## Trial Counsel's Failure to File a Motion to Suppress Did Not Amount to Ineffective Assistance of Counsel

{¶56} In her fourth assignment of error, Fogle argues that her trial counsel was ineffective by failing to challenge, in a motion to suppress, the results of the tests performed on her urine sample.

{¶57} The Sixth Amendment of course provides that an accused is entitled to the assistance of counsel in a criminal case. U.S. Const., amend. VI. For her convictions to be reversed based on an ineffective-assistance claim, Fogle would need to prove both that her counsel's performance was deficient and that she suffered prejudice from that deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove prejudice, Fogle must demonstrate that the result of her trial would have been different had her counsel not made the error that Fogle alleges. *See State v. Uselton*, 2004-Ohio-2385, ¶ 163 (5th Dist.).

**{¶58}** The failure of trial counsel to file a suppression motion does not by itself constitute ineffective assistance of counsel. *State v. Morgan*, 2019-Ohio-2785, ¶ 25 (5th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). To show that a failure to file a suppression motion equated to ineffective assistance, "'a defendant must show: (1) a basis for the motion to suppress; (2) that the motion had a reasonable probability of success; and (3) a reasonable probability that suppression of the challenged evidence would have changed the outcome at trial.'" *State v. Grove*, 2020-Ohio-1123, ¶ 40 (5th Dist.), quoting *State v. Phelps*, 2018-Ohio-4738, ¶ 13 (5th Dist.). A defendant will not prevail on a claim of ineffective assistance of counsel when the decision not to file a suppression motion "'was a tactical decision, there was no reasonable probability of success, or there was no prejudice,' or where counsel could have reasonably decided that filing such a motion would have been futile, even if there is evidence in the record to support such a motion." *Phelps* at ¶ 13, quoting *State v. White*, 2018-Ohio-18, ¶ 39 (4th Dist.).

**{¶59}** In this case, Fogle consented to the collection of a urine sample from her by law-enforcement officers. Chemical testing of that sample showed levels of alcohol and marijuana metabolite above the legal limits for drivers, and a lab report documenting those findings was admitted into evidence at Fogle's trial.

**{¶60}** Fogle jumps to the conclusion that had her trial counsel filed a motion to suppress, the results of the chemical testing would not have been admissible at her trial and then she would have been acquitted on the improper-handling charge. Nothing in our record, though, supports the view that a motion to suppress would have been successful. And even had the test results been excluded from the trial, the jury might

nonetheless have concluded that Fogle was guilty on the improper-handling charge, given the testimony from multiple lay witnesses indicating that Fogle had appeared intoxicated during and soon after the alleged crimes and given that Fogle herself acknowledged drinking that evening.

{¶61} Fogle's ineffective-assistance-of-counsel claim "with respect to both performance and prejudice rests on mere speculation, and '[s]uch speculation is insufficient to establish ineffective assistance.'" *State v. Mourer*, 2023-Ohio-4431, ¶ 25 (5th Dist.), quoting *State v. Eberhardt*, 2020-Ohio-4124, ¶ 55 (5th Dist.).

{¶62} For the reasons explained above, the judgment of the Court of Common Pleas of Licking County is affirmed.  Costs are to be paid by Appellant Tracy Fogle.

By: Gormley, J.;

Hoffman, J. and

King, P.J. concur.